DALLAS TITLE & GUARANTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 90466. Promulgated December 6, 1939.

*James P. Swift, Esq.,* for the petitioner.
*Hugh Brewster, Esq.,* for the respondent.

OPINION.

BLACK: We shall consider the issues, stated elsewhere, in the inverse order.

Was petitioner exempt from the excess profits tax imposed by section 702 of the Revenue Act of 1934? This section provides in part that:

(a) There is hereby imposed upon the net income of every corporation, for each income-tax taxable year ending after the close of the first year *in respect of which it is taxable under section 701*, an excess-profits tax * * *. [Italics supplied.]

Section 701 imposes a capital stock tax upon certain corporations and under subdivision (c) (2) thereof, it provides that the taxes thus imposed shall not apply "to any insurance company subject to the tax imposed by section 201, 204, or 207." Petitioner contends that it is an "insurance company" subject to the tax imposed by section 204. The material provisions of section 204 are set out in the margin.[4]

The parties have stipulated that "during the taxable year involved, petitioner was engaged in the title insurance business." On cross-examination of petitioner's witness, F. D. Price, it was brought out that petitioner also engaged in business other than the title insurance business. A corporation may be organized under the insurance laws of a state, be subject to supervision by the insurance officers of the state, and actually do a certain amount of insurance business, and yet fail to classify as an "insurance company" as that term is used in the Federal tax statutes. *Bowers* v. *Lawyers' Mortgage Co.*, 285 U. S. 182; *Lincoln Mortgage & Title Guaranty Co.* v. *Commissioner*, 79 Fed. (2d) 585; *Empire Title & Guarantee Co.* v. *United States*, 101 Fed. (2d) 69. It is the character of the business actually done in the tax year that determines whether the corporation is taxable as an insurance company. *Bowers* v. *Lawyers' Mortgage Co.*, *supra*. If insurance is its *principal* business, it is taxable as an insurance company.

---

[4] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

\* \* \* \* \*

(b) DEFINITION OF INCOME, ETC.—In the case of an insurance company subject to the tax imposed by this section—

(1) GROSS INCOME.—"Gross income" means the sum of (A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, and (B) gain during the taxable year from the sale or other disposition of property, and (C) all other items constituting gross income under section 22;

\* \* \* \* \* \*

(3) INVESTMENT INCOME.—"Investment income" means the gross amount of income earned during the taxable year, from investment income and from underwriting income as

\* \* \* \* \* \*

(4) UNDERWRITING INCOME.—"Underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

*United States* v. *Home Title Insurance Co.*, 285 U. S. 191. If, therefore, petitioner's title insurance business is its principal business, it is an insurance company taxable under section 204.

The character of petitioner's business actually done during the taxable year was testified to by F. D. Price, the auditor having supervision and control of petitioner's records, as follows:

Q Will you state what the records show as to the gross income for the Dallas Title and Guaranty Company in the year 1934?

A The gross income, according to the records, of the Dallas Title and Guaranty, was $92,558.37.

Q Mr. Price, have you figured what percentage of that income is derived from premiums on title policies and investments on title company holdings?

A Approximately 60% is underwriting income, and approximately 20% is insurance investment income, thereby making a grand total of approximately 80% of the gross income derived from the insurance business.

Petitioner also introduced in evidence its income tax return, in which it had reported taxable gross income of $89,302.50 and nontaxable gross income of $3,255.87, or a total of $92,558.37. The break-down of these figures into separate items is shown in our findings of fact. We think these facts, together with the stipulation that "during the taxable year involved petitioner was engaged in the title insurance business", establishes that petitioner was engaged in the insurance business, other than "life or mutual." We, therefore, hold that petitioner is an insurance company subject to the tax imposed by section 204, and that it is not subject to the excess profits tax imposed by section 702.

Is petitioner taxable on the $40,000, or any part thereof, transferred from the premium reserve account to the undivided profits account during the taxable year 1934?

Petitioner contends (1) that the $40,000 had been on hand as an asset since prior to 1930 and as such was not taxable gain in 1934; (2) that the transaction does not fall within the defined items of income contained in section 204 of the Revenue Act of 1934; (3) that all of the reserve fund of $149,829.88 on hand at the close of 1929 was legally taxable in the years in which it was earned prior to 1930, and consequently was not taxable in 1934; and (4) that the fact that no income tax was paid on the $149,829.88 in the years in which it was earned furnishes no authority for subjecting any part of the fund to income tax in 1934, prior to which year the entire fund was a part of petitioner's capital assets.

The respondent's position is that since petitioner has had the benefit of the net increase in the premium reserve account for the years 1913 to 1929, inclusive, as deductions from gross income in years prior to 1930, it should be required to include in its gross income for the taxable year 1934 that part of the reserve which was released during the

taxable year, namely, $40,000. In support of this position, the respondent cites, among other cases, *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, and *Estate of William H. Block*, 39 B. T. A. 338, and cases therein cited. The respondent has also affirmatively pleaded that petitioner is estopped to deny that the amount of $40,000 is taxable income to it for the year 1934.

In approaching the contentions thus made by both parties, it will be pertinent, we think, to determine the validity of the deductions taken by petitioner in years prior to 1930 of the net additions to the premium reserve account. Petitioner now says these were all illegal and should have been restored to income in the years when they were taken as deductions. The revenue acts prior to the Revenue Act of 1921, together with the Act of August 5, 1909, all allowed insurance companies to deduct from their gross income "the net addition, if any, required by law to be made within the year to reserve funds * * * ." Section 38 second of the Act of August 5, 1909 (36 Stat. 113); section II G. (b) of the Tariff Act of October 3, 1913 (38 Stat. 173); section 12 of the Act of September 8, 1916 (39 Stat. 768); section 234 (a) (10), Revenue Act of 1918 (40 Stat. 1079). Section 234 (a) (10) of the Revenue Act of 1921 (42 Stat. 256) allowed for the year 1921 a deduction "In the case of insurance companies (other than life insurance companies), in addition to the above (unless otherwise allowed) : (A) The net addition required by law to be made within the taxable year to reserve funds * * *." See *Hoosier Casualty Co.*, 6 B. T. A. 1343, 1357; affd., 32 Fed. (2d) 940; certiorari denied, 280 U. S. 581; and art. 691, Regulations 62. This deduction was not allowable for 1922 and subsequent years.

The Texas law (art. 4971, note 1, *supra*) under which the reserve of $149,829.88 was built up required petitioner to have "a fully paid up and safely unimpaired capital of at least" $100,000, and also "good available assets exceeding its liabilities, which liabilities for the purpose of this subdivision shall be taken to be its capital stock, its outstanding debts and *a premium reserve at the rate of fifty per cent of the current annual premiums* * * *." (Italics supplied.) It is our opinion that, in the absence of any evidence to the contrary, the deductions taken by petitioner in years prior to 1922 of the net additions to the premium reserve account in the total amount of $45,504.57 were all legal and proper deductions from gross income.

At this point, we think it is appropriate to remark that, while it is stipulated that at the close of 1912 petitioner carried on its books an account designated thereon as "Premium Reserve Account", with a then credit balance of $15,500.75, it was not stipulated that this amount had been deducted in determining the amount of petitioner's

excise tax under the 1909 Act. The stipulation as to deductions is as follows:

In the various income tax returns made by petitioner for the years 1913 to and inclusive of 1929, petitioner claimed and was allowed a deduction from its gross income of the amount of the net increase in such "Premium Reserve Account" for each such year.

Hence we have computed these deductions so taken from 1913 to 1921, both years inclusive, and arrived at the figure of $45,504.57 legal deductions, as stated above.

Beginning with the Revenue Act of 1921, effective January 1, 1922, Congress changed its method of taxing "Insurance Companies Other Than Life Or Mutual." See sections 246 and 247 of the Revenue Acts of 1921, 1924, and 1926 and section 204 of the Revenue Acts of 1928, 1932, and 1934. After the year 1921, Congress no longer allowed as deductions from gross income the net addition required by law to be made within the taxable year to reserve funds. Congress did provide, however, in section 246 (b) (1) of the Revenue Acts of 1921, 1924, and 1926 and section 204 (b) (1) of the Revenue Act of 1928, that in computing the gross income:

The term "gross income" means the combined gross amount, earned during the taxable year, from investment income and from underwriting income as provided in this subdivision, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners.

In section 246 (b) (4) of the Revenue Acts of 1921, 1924, and 1926 and section 204 (b) (4) of the Revenue Act of 1928, Congress provided that the term underwriting income "means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred", and in the following paragraph it provided as follows:

(5) The term "premiums earned on insurance contracts during the taxable year" means an amount computed as follows:
From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year.

Apparently petitioner deducted the net additions to the premium reserve account during the years 1922 to 1929, inclusive, in the total amount of $88,824.56 on the ground that this amount of the premiums collected was "unearned premiums", for in its balance sheets as of December 31, 1933 and 1934, attached to its 1934 return, it reported this reserve as "Reserve Unearned Premium Dec. 31, 1933, $140,000 and Dec. 31, 1934, $100,000."

It is now settled, however, that premiums paid a title insurance company are earned when paid and constitute gross income when received, and that reserves set up to meet future liabilities under title insurance policies are not deductible from gross income. *American Title Co.*, 29 B. T. A. 479; affd., 76 Fed. (2d) 332. Cf. *Pacific Employers Insurance Co.* v. *Commissioner*, 89 Fed. (2d) 186; *Massachusetts Protective Association, Inc.* v. *United States*, 22 Fed. Supp. 755. It, therefore, was improper for petitioner to deduct on its returns for the years 1922 to 1929, inclusive, the net additions to its premium reserve account during those years in the amount of $88,824.56. If this were the only part of the reserve with which we were dealing, we would sustain petitioner's contention that none of the $40,000 in question could be taxed to petitioner in 1934.

The situation is different, however, as to the additions to the premium reserve account during the years 1913 to 1921, inclusive. As we have already stated, the aggregate of the net additions to reserve in those years was $45,504.57, all of which petitioner deducted on its income tax returns for those years. The Commissioner properly allowed these deductions under the law and regulations which were in force during those years. In 1931 petitioner transferred by book entry from said account designated "Premium Reserve Account" to "Undivided Profits Account" the sum of $9,829.88. Presumably the Commissioner taxed that amount as income of petitioner for that year. He makes no contention to the contrary. This $9,829.88 subtracted from the $45,504.57 which the Commissioner had legally allowed as deductions in years from 1913 to 1921, inclusive, leaves $35,674.69. If, in a later year, any part of this legal reserve for which deductions have been properly allowed in prior years is released to the general uses of the petitioner and thus increases petitioner's free assets, to that extent the reserve should be treated as income in the year in which it became so available. *Maryland Casualty Co.* v. *United States, supra;* art. 240, Regulations 33 (Revised); art. 548, Regulations 45 (1920 Edition).

We think such a release as is referred to above took place during the taxable year 1934. On July 5 of that year, petitioner called a special meeting of its board of directors to consider the recommendation of its executive officers that $40,000 be transferred from the premium reserve account to the undivided profits account. After considerable discussion of the matter, a resolution was adopted whereby petitioner's officers were directed to make the transfer. We think this transfer of $40,000 amounted to a release of petitioner's legal reserve to that extent and was income to petitioner in 1934 to the extent of $35,674.69, upon authority of *Maryland Casualty Co.* v. *United States*,

*supra,* and *Commercial National Insurance Co.,* 12 B. T. A. 655. Cf. *Massachusetts Fire & Marine Insurance Co.,* 16 B. T. A. 625; *Central National Fire Insurance Co.,* 22 B. T. A. 1054; *Utah Home Fire Insurance Co.,* 24 B. T. A. 225; affd., 64 Fed. (2d) 763; certiorari denied, 290 U. S. 679. We do not think the change in the Texas law (art. 1302a, note 2, *supra*) which became effective on August 12, 1929, compels a different holding from that we have just made, in view of the fact that petitioner took no steps to release the amount in question until the taxable year 1934. Cf. *Estate of William H. Block, supra,* and cases therein cited, and *Creamette Co.,* 37 B. T. A. 216.

Our holding above disposes of all of petitioner's contentions except the second, namely, that the transaction does not fall within the defined items of income contained in section 204 of the Revenue Act of 1934. In support of this contention, petitioner relies principally upon *Commissioner* v. *Van Schaick,* 83 Fed. (2d) 940. That case involved section 204 (b) (1) of the Revenue Act of 1928, which contained a restricted definition of gross income of insurance companies other than life or mutual. This definition of gross income was enlarged by section 204 (b) (1) of the Revenue Acts of 1932 and 1934 to include "and (C) all other items constituting gross income under section 22." See note 4, *supra.* For the reasons already given, we hold that $35,-674.69 of the $40,000 in question should be included in petitioner's gross income under section 204 (b) (1) (C) of the Revenue Act of 1934.

For the reasons we have already stated, the remainder of the $40,-000 in question would not be taxable income to petitioner in 1934, unless it is so by some principle of estoppel. The Commissioner has specially pleaded estoppel, but we do not think he has proved any facts which establish it. It is true that the facts show that from 1922 to 1929, inclusive, the petitioner claimed and was improperly allowed deductions for additions to reserves in those taxable years amounting to $88,824.56. There were no misrepresentations of fact connected with these deductions. Petitioner did actually set up these reserves on its books, as required by the laws of the State of Texas, but it was not legally entitled to take deductions therefor and the Commissioner should not have allowed these deductions. *American Title Co., supra.* However, a misunderstanding of the law by both parties does not establish estoppel. Cf. *United States* v. *Scott & Sons, Inc.,* 69 Fed. (2d) 728. *Estate of William Steele,* 34 B. T. A. 173, and cases there cited. On the issue of estoppel we hold in favor of the petitioner.

Reviewed by the Board.

*Decision will be entered under Rule 50.*