THE COLUMBIA TITLE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

THE REAL ESTATE TITLE INSURANCE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 2211, 2212.    Promulgated July 17, 1944.

*Louis M. Denit, Esq.*, for the petitioners.
*Philip A. Bayer, Esq.*, for the respondent.

OPINION.

STERNHAGEN, *Judge*: In their income tax returns for the fiscal year ended November 30, 1940, the petitioners for the first time claimed to be insurance companies within the purview of section 204, Internal Revenue Code. Since 1902 they have operated jointly and the operating income of each for 1940 was the same. They contend that since 76.6 percent ($72,739.08) of the operating income ($94,826.33) was derived from the operation of the title insurance business, they must be recognized as insurance companies under the statute. Because at least one-half of the $72,739.08 operating income was derived from

the issuance of only certificates of title, the Commissioner denied the statutory classification, holding that only 38.3 percent of petitioners' operating income, or one-third of their total income, was derived from insurance. If insurance was not petitioners' principal business, they were not entitled under section 204 to file returns as insurance companies. *Bowers* v. *Lawyers' Mortgage Co.*, 285 U. S. 182; *National Commercial Title & Mtg. Guar. Co.* v. *Duffy*, 132 Fed. (2d) 86; *Empire Title & Guarantee Co.* v. *United States*, 101 Fed. (2d) 69; *Lincoln Mortgage & Title Guaranty Co.* v. *Commissioner*, 79 Fed. (2d) 585; *Dallas Title & Guaranty Co.*, 40 B. T. A. 1022.

The petitioners contend that the certificates of title which they issue are insurance contracts.

The title policy of petitioners provides in part that they "Do Hereby Covenant to forever insure, warrant, guarantee and defend * * * title to the real estate described * * * from and against any and every claim, lien, incumbrance or defect whatsoever * * * and to pay * * * the amount of all loss, cost and damages suffered or sustained thereby." In the certificate of title they "do hereby certify * * * that according to the record the title * * * is, at the date hereof, good in fee simple." In some of the certificates of title the liability was expressly limited to a stated amount.

That the "title policy" is an insurance contract there can be no doubt; but in our opinion, the certificate of title is not. In Couch's Cyclopedia of Insurance Law title guaranty insurance is defined as a contract (sec. 49):

whereby one agrees for a consideration to protect another's title to real estate. More specifically it insures against all loss or damage, not in excess of a specified sum, which assured may sustain by reason of existing defects in or unmarketableness of title to a described estate, mortgage, or interest, or because of leases and encumbrances changing the same, as of the date of the policy, or by reason of defects in the title of a mortgagor to the mortgaged estate, or mortgaged interest. A contract guaranteeing a title is one of insurance rather than of suretyship, so that it is governed for purposes of construction by the rules applicable to other insurance contracts. And although a contract of title insurance is much in the nature of a covenant of warranty, or a covenant against encumbrances, it is in fact essentially and solely a contract of indemnity, and not a wagering policy, or even an expression of opinion backed by a forfeiture, it being well established that it is a contract of indemnity.

and as a contract (sec. 1228):

of insurance and of indemnity, the sole object and purpose of which is to cover possibilities of loss through defects that may cloud or invalidate titles; that is, to protect or save insured harmless from loss consequent upon defects, liens, or encumbrances that may burden his title when it is taken.

The word "certify" does not mean to insure or to guarantee. It means "to give certain information of," "to verify," "to attest authorita-

tively," and "to testify to in writing." Webster's New International Dictionary (2d Ed.) 1940.

The certificate of title contains no covenant or agreement of insurance, warranty, guaranty, or defense of title; it contains no agreement of indemnity. It is merely a report and opinion as to the title as shown by the records. On the other hand, a title policy is a declaration of opinion of the issuer, "backed by an agreement to make that opinion good, in case it should prove to be mistaken, and loss should result in consequence to the insured." *Foehrenbach* v. *German-American Title & Trust Co.*, 217 Pa. 331; 66 Atl. 561. A company which certifies title is not a guarantor of title and is liable only as an attorney would be for negligence or want of skill. Such liability may be limited by agreement. *Glyn* v. *Title Guarantee & Trust Co.*, 117 N. Y. Supp. 424; *Bridgeport Airport* v. *Title Guaranty & Trust Co.*, 111 Conn. 537; 150 Atl. 509.

None of the cases cited by the petitioners supports their contention that the certificate of title issued by them is an insurance contract. *Purcell* v. *Land Title Guarantee Co.*, 94 Mo. App. 5; 67 S. W. 726, was an action on a policy of title insurance. The title company not only guaranteed the correctness of the certificate, but also guaranteed the title. The following is from the opinion:

The principal contention upon the part of the defendant is that the writing in suit is not a guaranty of title,—only a guaranty of the correctness of the certificate. This contention is based upon the following recitation in the certificate, viz.: "And the said Land Title Guarantee Company, for the consideration of forty dollars, makes this certificate to John Purcell and Pierce Beresford, their heirs and assigns, and guaranties the same to be correct." Standing alone, there could be no construction put upon it, other than that it was merely a guaranty of the correctness of the certificate, for that is its plain meaning. It would not be a debatable point. * * * In the next clause of said writing, among other things, we find the following language: "Said *guarantor shall not be liable for damages beyond five thousand dollars*, and shall at its own cost defend said *guaranties*, and heirs and assigns, in every suit or proceeding on any *claim against or right to said land, or any part thereof, adverse to the title hereby guarantied*," etc. [Italics ours.] If the defendant was only contracting for the correctness of the certificate, wherein the rule of damages would be very different from that in a case of guaranty of title, why was it deemed necessary to insert a provision in the contract guarding the rights of the defendant so closely as to require of plaintiffs, if any proceedings were instituted, or claim against or right to the land, to give it written notice, in order that it might protect its interest to be affected by said proceedings, or such claim adverse to the title guarantied? And the language used, "adverse to the title hereby guarantied," seems to be just as explicit as that in the former clause, wherein the correctness of the certificate is guarantied. And further it is provided that if loss is occasioned by any proceedings, or claim or right established against the property. "if less than the whole of the land, then the liability of the guarantor," shall be proportionate. Thus not only is there a provision guarding the rights of the defendant in case of proceedings against the property, or claims or rights asserted against it, but a rule is provided by which the extent of the defendant's liability is to be ascer-

tained in case of loss. And the succeeding clause provides that, "if the guarantor shall at any time pay any claim under this certificate and guaranty," it shall be subrogated to all the rights of the guarantee, and shall be entitled to an assignment of all such rights. If the defendant's undertaking was only as to the correctness of the certificate, it would not have to answer for loss occasioned by any proceedings against the property, or by reason of the assertion of any claim or right against it, in which event the said two last clauses of the instrument would be wholly unnecessary as a part of the same. Further, what meaning are we to attach to the words, "adverse to the title hereby guarantied," except what they plainly import—that the defendant was a guarantor of the plaintiffs' title? There are no other words used in the entire instrument that are in the least in conflict with them, or the meaning attached to them. The fact that the defendant in the first instance guarantied the correctness of the certificate is in no sense inconsistent with a guaranty of title also. In fact a certificate of title is in effect only a corollary of a guaranty of title. It seems to us that the writing, looking at it as a whole, in all its provisions, should be.construed as a guaranty of title.

Obviously that case is distinguishable upon the facts, for the instant petitioners' certificate of title contains no guaranty of title and no agreement to answer for any loss.

*Title Ins. & Trust Co.* v. *City of Los Angeles*, 61 Cal. App. 232; 214 Pac. 667, is also distinguishable. In that case it was held that a city license tax upon the business of issuing certificates of title which did not insure was not applicable to a corporation issuing certificates guaranteeing the title as it appeared from the record. After defining title insurance as "an agreement whereby the insurer, for a valuable consideration, agrees to indemnify the insured in a specific amount against loss through defects of title to real estate," and quoting from the California Civil Code, section 2527: "Insurance is a contract whereby one undertakes to indemnify another against loss, damage, or liability, arising from an unknown or contingent event," the court held that the title company's guaranty certificate was an insurance contract and not a mere contract for an opinion after search of the record.

*United States* v. *Home Title Ins. Co.*, 285 U. S. 191, was a case in which the title company issued two kinds of guaranty contracts, and it was held that the issuance of contracts in which the company guaranteed the payment of mortgage loans did not require a decision that the company was not an insurance company. The question whether the issuance of certificates of title was the business of insurance was not touched upon. The case of *Dallas Title & Guaranty Co.*, 40 B. T. A. 1022, is also not helpful. It was stipulated that the company was engaged in the title.insurance business, 65 percent of its gross income being premiums. Since insurance was the company's principal business, it was held to be within the statutory classification of insurance company. Whether or to what extent the company issued certificates of title without guaranty does not appear and was not discussed.

Although there are two types of title insurance, one being a guaranty limited to the record title and the other an absolute guaranty, the certificate of title issued by petitioners carries no guaranty whatever and does not fall within either class.

Since the certificate of title issued by petitioners is not an insurance contract and most of their business is not insurance, they are not entitled to make returns as insurance companies under section 204, Internal Revenue Code.

The determination of the respondent is sustained.

*Decision will be entered for the respondent.*