City Title Insurance Company v. Commissioner.
City Title Ins. Co. v. Commissioner
Docket Nos. 2881, 3326.
United States Tax Court
1944 Tax Ct. Memo LEXIS 111; 3 T.C.M. (CCH) 984; T.C.M. (RIA) 44302; September 22, 1944
*111 Henry Halpern, C.P.A., for the petitioner. Ellyne E. Strickland, Esq., for the respondent. STERNHAGEN Memorandum Opinion STERNHAGEN, Judge: The Commissioner determined deficiencies in income tax for 1938, 1939, 1940 and 1941, of $102.12, $336.16, $844.67 and $2,096.61 and in excess profits tax of $98.73 for 1940. He disallowed an addition each year to a title policy loss reserve, holding that it represented earned premiums, and constituted merely a solvency reserve. The proceeding was presented on the following stipulation: 1. Petitioner is a corporation organized and existing under the laws of the State of New York, with its principal office at 205 Montague Street, Brooklyn, New York. Petitioner is engaged in the business of insuring titles to real estate. 2. Petitioner keeps its books and files its tax returns on the accrual basis of accounting. For the years 1938, 1939, 1940 and 1941 petitioner filed corporation income tax returns, and for the years 1940 and 1941 petitioner filed corporation excess-profits tax returns. All of these returns were filed with the Collector of Internal Revenue for the First New York District. 3. For the taxable years involved in this proceeding, *112 petitioner reported gross underwriting income in the following amounts: 1938
$ 66,246.94
1939
73,908.00
1940
91,232.36
1941
143,573.32
4. Prior to the year 1938 petitioner had set up on its books an account which it termed a title policy loss reserve. At the beginning of the year 1938 this reserve was in the amount of $800.00. At the end of the year 1938 this reserve had been increased to $1,277.17, and at the end of the years 1939, 1940 and 1941 it had been increased to the respective amounts of $3,456.27, $6,208.58, and $10,355.18. 5. The reserve described in paragraph 4 hereinabove was set up and maintained by the petitioner under the provisions of Section 434 of the New York State Insurance Law and in accordance with the requirements of the Superintendent of Insurance of the State of New York. 6. Petitioner deducted from its underwriting income for each of the taxable years involved herein the amount which it added in that year to its title policy loss reserve, as follows: 1938
$ 477.17
1939
2,179.10
1940
2,752.31
1941
4,146.60
7. The respondent disallowed each of the deductions claimed by the petitioner in the amount set out in the last preceding *113 paragraph and restored the respective amounts to the petitioner's underwriting income for the respective years. The amounts which were added to the title policy loss reserve pursuant to the New York State Insurance Law are said by petitioner to be unearned premiums, and it contends that these may properly be deducted under Internal Revenue Code, Section 204 (b) (5). [1] The Commissioner denies that the additions to the reserve are unearned premiums and holds that they are not therefore within the deduction permitted by the statute. This is the crux of the controversy. The taxpayer is engaged in the business of title insurance. This however does not necessarily mean that all its income is derived *114 from insurance premiums, for corporations within that general category customarily derive income from sources and activities other than insurance; and when a substantial part, say more than half, of the income is other than insurance, a corporation may not avail itself of the privileges of the insurance provisions of the revenue act. Columbia Title Insurance Co., 3 T.C., 1099; Dallas Title & Guaranty Co., 40 B.T.A. 1022, and cases cited. It appears from the stipulation that the petitioner is engaged in the business of insuring titles, but to what relative extent does not appear. Section 434 of the New York State Insurance Law, under which the reserve was set up, provides that the required reserve shall be composed of a percentage not alone of the insurance premiums received but also of the fees received for examinations or searches and for abstracts of title. Such latter fees are other than premiums for title insurance, and a reserve made up of a percentage of such receipts can not be called a premium reserve or be regarded as unearned premiums within Section 204(b)(5). Early v. Lawyers Title Ins. Corp., 132 Fed. (2d) 42. *115 So far as the stipulation shows, the reserve set up under the New York State Insurance Law may have been made up to a large extent out of income which had no relation whatever to the petitioner's premiums or its insurance liability, and as such there would be no reason to suppose that the revenue act permitted such amounts of non-insurance income to be excluded from taxable gross income. The New York State Insurance Law does not provide that such reserve shall be held as unearned premiums or for application to insurance liabilities, but only that it "shall be charged as a reserve liability of such corporation in determining its financial condition." The reserve required under New York law is quite different from that required by Virginia law and considered in Early v. Lawyers Title Ins. Corp., supra.[2] The reserve required by Virginia law was composed entirely of portions of the receipts from premiums on contracts of title insurance and it was held that they constituted unearned portions of the original premiums. As such they were held to come within Section 204(b)(5) providing for the deduction of unearned premiums. This was because the Commonwealth *116 of Virginia recognized such a reserve as constituting unearned premiums, although in other States premiums on title insurance are sometimes recognized as earned in their entirety when paid and no part as unearned. American Title Co. v. Commissioner, 76 Fed. (2d) 332. Upon the stipulated facts it is held therefore that no part of the reserve set up and maintained by the petitioner under Section 434 of the New York State Insurance Law may be deducted under Section 204 (b) (5) of the Internal Revenue Code as unearned premiums, and the Commissioner's determination is sustained. Decision will be entered for the respondent.
Footnotes
1. (5) Premiums Earned. - "Premiums earned on insurance contracts during the taxable year" means an amount computed as follows: From the amount of gross return premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year. * * *↩
2. Compare the California law as discussed in the Early case, p. 46, and the Texas law in Commissioner v. Dallas Title & Guaranty Co., ↩ 119 Fed. (2d) 211.