## PORTLAND CREMATION ASS'N v. COMMISSIONER OF INTERNAL REVENUE.

Circuit Court of Appeals, Ninth Circuit.
April 4, 1929.

No. 5661.

Carey & Kerr, Charles E. McCulloch, and Ivan F. Phipps, all of Portland, Or., for appellant.

Mabel Walker Willebrandt, Asst. Atty. Gen., and Sewall Key and Edwin G. Davis, both of Washington, D. C., and Morton P. Fisher, of Baltimore, Md. (C. M. Charest, General Counsel, and Shelby S. Faulkner, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). ■ Three separate judgment orders were entered by the Board of Tax Appeals, and the three petitions for review have by stipulation of the parties been

consolidated for consideration and decision in this court. The question presented in each case is whether or not the petitioner is entitled to exclude the amounts set aside by it as a maintenance fund for the perpetual care of niches, urns, and vaults sold by it from the return of its gross funds for the four years in question here, on the ground, either that they were trust funds, or were deductions allowable in computing its net income for those years under 26 USCA § 986. The majority of the Board of Tax Appeals. (Portland Cremation Ass'n v. Commissioner of Internal Revenue, 10 B. T. A. 65), were of the opinion that, inasmuch as the maintenance fund set apart by the petitioner was so free from outside constraint that the petitioner might borrow from it at will and limit its amount at will, the covenants in the deeds and the resolutions of the directors establishing the fund, and the representations made to purchasers, constituted no more than a contractual obligation cognizable at common law and were insufficient to create a trust either express or implied such as a court of equity would administer, there being no words of trust nor a statutory obligation, and that all sums received by the petitioner were gross income, and there was no warrant for regarding any part of it as an identified sum to be treated as if the petitioner never received it. Four members of the Board dissented, and were of the opinion that the questions involved had been settled by the decisions in Metairie Cemetery Ass'n v. Commissioner, 4 B. T. A. 903, and Inglewood Park Cemetery Ass'n v. Commissioner, 6 B. T. A. 386, and that the petitioner's representations and deeds to purchasers established the purpose of the maintenance fund and declared the beneficiaries thereof and the petitioner's records determined the amount thereof, and that its acts in making such representations to purchasers and in covenanting for perpetual care and in formally setting aside a specified portion of the receipts was sufficient to create an enforceable trust.

The decisions of the Board of Tax Appeals have held that money received from sales and placed in a fund for maintenance by a taxpayer which conducts a business similar to that of the petitioner herein is not properly deductible in computing net income during a taxable year unless by statutory command or by its own act the taxpayer has placed the fund beyond its power to use or disburse or diminish, and that, if the taxpayer may at any time reduce the fund or wipe it out so that its own liability to beneficiaries will be for breach of covenant or contract, it is not to be deducted in computing net income. Springdale Cemetery Ass'n, Appeal of, 3 B. T. A. 223; Mead Construction Co., 3 B. T. A. 438. The petitioner relies upon the decision in Metairie Cemetery Ass'n v. Commissioner, 4 B. T. A. 903. There the contracts issued to purchasers provided for perpetual care, and oral representations were made to the purchasers that the purchase price was to be held in trust, which representations were reasserted by a formal resolution of the directors of the association. It was held that the parol agreement was sufficient to create a valid trust, and that the funds, having been received by the taxpayer in trust for the specific purpose of caring for and maintaining burial places, gave rise to no taxable income to the taxpayer. That case differs from the case at bar only in the fact that in the latter there was no express agreement or representation that any particular portion of the moneys received by the taxpayer was to be held in trust, whereas in the former the whole purchase price was to be held in trust. The petitioner relies also upon the Inglewood Park Cemetery Ass'n Case, 6 B. T. A. 386. There the Board held that the maintenance fund was a trust fund, for the reason that provision was made for setting apart a specific portion, to wit, 25 per cent., of the purchase price for the perpetual care of the lots.

In the case at bar, the representations went no further than to say that a portion of the purchase price would be placed in a maintenance fund. In the Springdale Cemetery Ass'n, Appeal of, 3 B. T. A. 223, the taxpayer had set up a reserve based on an estimate, and the directors made a reserve of 25 cents a square foot as the amount to be reserved to provide a sufficient fund for future care. The board held that there was lacking the clear evidence necessary to establish a trust, and that, so far as the records showed, the directors might at any time reduce the fund or perhaps wipe it out without restraint; "their liability, if any, being only for breach of covenant or contract." But that case is to be distinguished from this in the fact that there the corporation's by-laws contained no provision for appropriating as a perpetual care fund any part of the receipts from sales of lots and no resolution to that effect had been passed by the board of directors.

In short, the decisions of the Board of Tax Appeals seem to narrow the question here involved to this: That, in case the taxpayer specifies in its representations to purchasers that its covenant to maintain is

backed by a permanent fund to be created by placing aside either all or a named portion of the purchase price received on each sale, the fund will be a trust fund, but, if in the representations to purchasers the portion of the money so received and so to be set aside is left unspecified, there will be no trust or obligation enforceable in equity but only a contract, breach whereof will be remediable only by an action at law. This seems to us an unsubstantial distinction. We cannot agree that the fund so set aside by the petitioner here is not essentially a trust fund. The deeds it gave to purchasers contained a covenant to the grantee and his heirs that the petitioner would maintain the niche or vault forever. All sales were made with the representation that said covenant was guaranteed by a permanent maintenance fund and that a portion of the purchase price paid by each purchaser would be placed in that fund, and that the fund could not and would not be used for any other purpose. The proportionate amount of the receipts to be placed in that fund was fixed by resolution of the board of directors and the stockholders of the petitioner, and the fund has been invested in the main in United States Liberty bonds and war savings stamps, and the income has consistently been used for the upkeep of the property sold and has not been sufficient for that purpose.

It is true that a mere honorary obligation which one may perform or not at his will does not create a trust. But a trust may be created by parol, and its creation does not depend on the use of particular words of trust. Chicago, etc., Ry. Co. v. Des Moines, etc., Ry. Co., 254 U. S. 196, 208, 41 S. Ct. 81, 65 L. Ed. 219. It may be inferred from facts and circumstances. Thus the owner and donor of personal property may create a perfect trust by his unequivocal declaration in writing or by parol that he himself holds such property in trust for purposes named. 26 R. C. L. 1182. And any words which indicate with sufficient certainly a purpose to create a trust will be effective in so doing. Gutch v. Fosdick, 48 N. J. Eq. 353, 22 A. 590, 27 Am. St. Rep. 473; Faulds v. Dillon, 231 Mich. 509, 204 N. W. 733. While the petitioner here may be said to have had control of the money which it had placed in the maintenance fund, diversion of that fund for corporation purposes or any· purpose other than that designated by its promise to maintain the same, and the specific resolution of its board of directors to devote to that purpose 20 per centum of its receipts from sales, might be enjoined by a suit in equity as a

violation of the trust agreement. The crucial question is, Did the petitioner's patrons possess the right to protect themselves and demand the preservation of the fund which the petitioner had covenanted with them to maintain and by its resolution had set apart for maintenance? That question is by the authorities answered in the affirmative. 26 R. C. L. 1359; Rodney v. Shankland, 1 Del. Ch. 35, 12 Am. Dec. 70; Linneman v. Moross, 98 Mich. 178, 57 N. W. 103, 39 Am. St. Rep. 528.

The judgments are reversed.