## EARLY v. LAWYERS TITLE INS. COR-PORATION.

### No. 4969.

Circuit Court of Appeals, Fourth Circuit.

Nov. 12, 1942.

Samuel H. Levy, Sp. Asst. to the Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., Sewall Key and Edward H. Horton, Sp. Assts. to the Atty. Gen., Sterling

Hutcheson, U. S. Atty., and John V. Cogbill, Asst. U. S. Atty., both of Richmond, Va., on the brief), for appellant.

Alexander W. Parker and Joseph F. Hall, both of Richmond, Va. (A. D. Christian, of Richmond, Va., on the brief), for appellee.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

PARKER, Circuit Judge.

This is an appeal from a judgment for plaintiff in a suit instituted by a title insurance company to recover income taxes paid under protest for the years 1936, 1937 and 1938. The question presented is whether, in determining underwriting income for the years in question, the company was entitled to deduct, as unearned premiums, portions of premiums which it was required by a statute of Virginia to place in a reserve and which the statute provided should "at all times and for all purposes be considered and constitute unearned portions of the original premiums". The court below answered this question in the affirmative and entered judgment for the taxpayer, whereupon the collector against whom suit was brought appealed to this court.

The title insurance company was organized under the laws of the State of Virginia in the year 1925. Prior to 1936 it was not required to maintain any reserve on account of its outstanding contracts. On December 31, 1928, however, it voluntarily set up a reserve for its contracts then in force in an amount equal to 10% of the amount of its premium receipts less the amount paid out in discharge of obligations under its contracts, and throughout the years 1929 to 1935, inclusive, it voluntarily added to the reserve 10% of each premium received and charged against it amounts paid out in discharge of liabilities under its contracts. The amount thus paid out in discharge of liabilities was approximately 6% of the premiums received, and the amount of the reserve at the end of the year 1935 was $79,507.76. During this period the company, for income tax purposes, made no deduction from its underwriting income on account of unearned premiums; and the reserve on hand at the end of the year 1935 represented income upon which income tax had been duly paid.

In 1936 the General Assembly of Virginia enacted a statute, Code 1919, § 4325-a, which became effective June 18, 1936, relating to the regulation and supervision of title insurance companies, being ch. 79 of the Acts of the General Assembly of Virginia of 1936, p. 102. Section (e) of that act, which is the one here pertinent, is as follows:

"(e) On any contract of title insurance, hereafter issued by a domestic title insurance company, there shall be reserved initially a sum equal to ten per centum of the original premium, whether or not the risk shall be for a fixed time. If for a fixed time, then at the end of each year for the first five years, there shall be a reduction in the sum reserved of one per centum of the original premium, and thereafter at the end of each year of the remainder of said time a reduction of a pro rata portion of the remaining five per centum thereof, except that if the risk is of a mortgagee, trustee in a deed of trust to secure debt, or creditor secured thereby, no reduction shall be made that will decrease the sum reserved below five per centum of the original premium, until the expiration of the time of the risk. If not for a fixed time, then a risk shall be deemed to have been written, if of an owner of property, or any interest therein, for twenty years from the date of the contract, and if of a mortgagee, trustees in a deed of trust to secure debt, or creditor secured thereby, for a time expiring three years after the final maturity of the debt as stated in the mortgage or deed of trust, or for twenty years from the date of the contract, whichever time shall be longer. On any contract of title insurance heretofore issued, a reserve shall be set up and hereafter maintained, in such sum as would have been required if the above requirements had existed at and after the date of the contract. *Said sums, herein required to be reserved for unearned premiums on contracts of title insurance shall at all times and for all purposes be considered and constitute unearned portions of the original premiums.* In calculating reserves, contracts of title insurance shall be assumed to be dated in the middle of the year in which they were issued." (Italics supplied.)

Acting under the provisions of this act, the company set up a reserve of $66,942.81 for contracts outstanding on the date the act became effective, and added to the reserve the sum of $29,577.86 from premiums received during the remainder of the year. From this, statutory deductions of $6,036.-

84 during the remainder of the year were deducted, leaving the amount of the reserve fund at the end of the year $90,483.83. The company deducted this amount from the amount of gross premiums for the year 1936, which was $278,126.56, leaving a balance of $187,642.53, which was reported as underwriting income for the year. For the years 1937 and 1938, the company added to the amount of premiums received during the year the reserve of the preceding year and deducted the reserve held at the end of the year, as same had been built up by the addition of 10% from premiums collected and the deduction of statutory deductions. On a reauditing of the returns, the Commissioner of Internal Revenue rejected the contention that the company was entitled to a deduction of the reserve as representing unearned premiums and assessed deficiencies accordingly. These deficiencies the company paid under protest and instituted this suit for their recovery.

Section 204 (b) (1) of the Revenue Act of 1936, 26 U.S.C.A. Int.Rev.Code § 204(b) (1), requires that insurance companies include "underwriting income" in their report of gross income. "Underwriting income" is defined by section 204(b) (4) as "premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred". Premiums earned are defined by section 204(b) (5) as follows:

"(5) Premiums earned. 'Premiums earned on insurance contracts during the taxable year' means an amount computed as follows: From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained *add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year.*" (Italics supplied.)

■ The contention of the appellant is that premiums paid for title insurance are earned when received, that there is no basis for treating any part of such premiums as unearned and that the effect of the statute of Virginia is to provide a mere solvency reserve which the company is not entitled to treat as unearned premiums. Appellant is undoubtedly correct in the position that ordinarily a premium paid for title insurance is to be treated as fully earned when received. American Title Co. v. Commissioner of Internal Revenue, 3 Cir., 76 F.2d 332; Huebner on Property Insurance, p. 493. And, in the absence of the Virginia statute relied on by the company, we should feel constrained to hold that no part of the premiums received for title insurance could be treated as "unearned" within the meaning of the section of the Revenue Act above quoted.

■■ As said by the Circuit Court of Appeals of the 5th Circuit in Commissioner of Internal Revenue v. Dallas Title & Guaranty Co., 119 F.2d 211, 213, however, "it is not impossible for premiums paid a title insurance company to be unearned". Unquestionably the premium collected for title insurance is not all clear profit or income to the company immediately upon its receipt. As a matter of fact, there is a time element as well as the element of contract to be considered in connection with the risk assumed in this type of insurance as well as in other types; and if any portion of the premiums, in consideration of the time element, is given, either by law or contract, the status ordinarily accorded an unearned premium in insurance law during any portion of the period for which the risk is operative, there is no reason why it should not be treated as an "unearned" premium within the meaning of the taxing statute during this period. We think that the Virginia statute has this effect.

■ The liability under a title insurance policy, which in the case of this company is shown under the law of averages to be around 6% of the premiums collected, is outstanding as a continuing liability of the company to the policyholder; and, in recognition of this fact, the Virginia statute requires that a certain portion of the premiums, 10%, be set aside and held intact for a period of time for the discharge of this liability. The sums thus set aside "at all times and for all purposes" are, by mandate of the statute, to "constitute unearned portions of the original premiums". This means that they are not available to the company for its ordinary purposes, until the times limited in the statute have expired, but, until then, are held in trust for the benefit of the contract holders. If the company should in the meantime become insolvent, they would be available as unearned premiums for reinsurance of the contracts, or if not used for that purpose would belong to the contract

holders. Johnson v. Button, 120 Va. 339, 91 S.E. 151, 153; Lovell v. St. Louis Mutual Life Ins. Co., 111 U.S. 264, 274, 4 S.Ct. 390, 28 L.Ed. 423; 32 C.J. p. 1040.

There is no reason why the legislature may not thus require the company to deal with a portion of the premiums collected, just as, in the absence of contract between the parties, it may provide how the policy is to be valued for the purpose of setting up a reserve. Cf. 32 C.J. 1017; Elder v. Bankers' Life Ins. Co., 117 App. Div. 722, 102 N.Y.S. 702. If the statute had provided that 10% of the premiums collected should be held for the benefit of policyholders for a fixed period and should belong to the company only after it had carried the liability for that period, it would hardly be contended that this portion of the premiums was earned within the meaning of the Revenue Act until the expiration of the period; but this is precisely the effect of the Virginia statute in providing that the sums required to be placed in reserve "shall at all times and for all purposes be considered and constitute unearned portions of the original premiums".

Very much in point is the decision of the Circuit Court of Appeals of the First Circuit in Massachusetts Protective Ass'n v. United States, 1 Cir., 114 F.2d 304, 312. That case involved the right to deduct as unearned premiums a reserve required by law to be kept by an accident and health insurance company. In that case, as in this, there was no provision for cancellation or for return of any part of the premium to the insured. In upholding the right to deduct this reserve as unearned premiums, notwithstanding that there was no requirement that anything be returned to the policyholder, the court said:

"Congress is only interested in determining what part of a company's gross income should be treated as net income for the purposes of taxation. McCoach v. Insurance Co. of North America, 1917, 244 U.S. 585, 37 S.Ct. 709, 61 L.Ed. 1333. In general, premium income is not such, and its inclusion in gross income is only justified by the deductions allowed. See Hearings before the Committee on Ways and Means on the Revenue Act of 1918, 65th Cong., 2nd Sess., Pt. 1 (1918) 811. The additional reserve for non-cancellable health and accident policies, whether returnable to the insured or not, is not available for the use of the general purposes of the plaintiff. It is held as a liability to provide for the payment or reinsurance of specific contingent insurance liabilities proven by experience to be a part of the cost of this particular type of insurance in the future years. * * * As long as these reserve funds must be held to provide for expected insurance liabilities in the future on these non-cancellable health and accident policies and are not to be used for the general purposes of the company, they are not 'earned premiums' within the meaning of Congress and not includible in gross income. The test is not whether the part of the premium set aside in the reserve for non-cancellable health and accident insurance 'belongs' to the company in the event of cancellation or lapsing of the policy, but whether that amount is such a part of the company's gross income as Congress considered should be treated as net income for the purposes of taxation. McCoach v. Insurance Co. of North America, supra. We hold that it is not."

The Collector relies upon the regulation of the Commissioner of 1924, art. 692, III-16-1510 I.T. 1981, to the effect that "the provisions of the Revenue Act * * * with respect to the division of premiums received by insurance companies into earned and unearned premiums are not applicable to title insurance companies whose premiums are earned in full at the time their services are rendered". It is manifest, however, that this regulation can have no application to a situation where, as here, a portion of the premium is in fact unearned as the result of a statutory provision, which withdraws it from the control of the company and requires that it be held in trust for the contract holder during the portion of the period of risk which the statute prescribes. We agree that a statute of the state could not be given the effect of withdrawing from taxation under the Revenue Act what was in fact an earned premium by the mere device of calling it unearned; but the Virginia statute does more than this. It gives to the portions of the premiums which it requires to be placed in the reserve all of the attributes that pertain to unearned premiums, i. e. it withdraws them from the power of the company to use them for its general purposes and impresses them with a trust in favor of contract holders until the risk shall have been carried for the period that the statute prescribes. Until this period has expired, the company has no more control over them than a life insurance company has over the unearned portion of the premium paid

for life insurance or than a fire insurance company has over the portion of the premium applicable to an unexpired risk. Until then, the company cannot be truly said to have earned the portion of the premium which the law requires it to reserve and hold in trust during this crucial period of risk.

The Collector relies also upon the ruling of the Treasury Department in 1927, G.C. M. 2332 VI-2 Cum. Bulletin 262, to the effect that title insurance companies of California might not exclude from gross income the surplus fund required to be maintained by the law of that state. It appears, however, that the reserve fund required by the California statute was a mere guaranty reserve fund, which was required to be 25% of capital stock, and that the California statute did not undertake to require that a portion of all premiums be placed therein or to impress upon them the character of unearned premiums. The same observation may be made with respect to the Pennsylvania statute, which was before the court in American Title Co. v. Commissioner of Internal Revenue, 3 Cir., 76 F.2d 332. The reserve there required was a true guaranty fund limited in amount to $250,000, with no provision for the release to free assets of any portion of the funds paid into it. The reserve fund here is built up of portions of premiums held in trust during the years of what is presumably the greatest risk and then released into the free assets of the company. In the case of the California and Pennsylvania statutes, what was created was merely a solvency reserve. The statute here went further and gave to the funds covered into the reserve the status of unearned premiums with all the legal incidents appertaining thereto.

It is argued that the term "unearned premiums" in the taxing statute must be given its ordinary meaning. This is undoubtedly correct; but so also must the term as used in the statute of Virginia, and when given that meaning there its effect is to impress upon the portions of the premiums reserved the characteristics which bring them within the meaning of the term as used in the taxing statute.

The argument is made that to permit the deduction of the reserve set up under the Virginia statute will destroy uniformity in the application of the tax law; but uniformity is not destroyed when the factual basis to which the statute is ap-

plied is changed. The statute is applied with uniformity when unearned premiums are deducted from underwriting income; and the law of the state giving the status of unearned premiums to the portion of the premiums required to be reserved merely provides a difference in the basis of fact as to what premiums are unearned. We must look to the law of the state to determine the nature of the interest which the company has in the portions of the premiums reserved. Having determined this, we look to the federal statute to determine whether such interest is taxable thereunder. "State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed." Morgan v. Com'r of Internal Revenue, 309 U.S. 78, 80, 626, 60 S.Ct. 424, 426, 84 L.Ed. 585, 1035; Blair v. Com'r of Internal Revenue, 300 U.S. 5, 9, 57 S.Ct. 330, 81 L.Ed. 465; Freuler v. Helvering, 291 U.S. 35, 54 S.Ct. 308, 78 L.Ed. 634; Legg's Estate v. Com'r of Internal Revenue, 4 Cir., 114 F.2d 760, 763; Dayton & Michigan R. Co. v. Com'r of Internal Revenue, 4 Cir., 112 F.2d 627, 630; Leser v. Burnet, 4 Cir., 46 F.2d 756, 760.

We were disturbed upon the argument because the deduction of the reserve resulted in what seemed to be a distortion of the income of the company for the year 1936. Further consideration convinces us that the position of the company with respect thereto is correct. Under the language of the Revenue Act there is no authority for adding to premiums received during 1936 any part of the reserve held at the end of the preceding year, as none of this reserve had been given the status of unearned premiums. The passage of the Virginia statute unquestionably resulted in funds to the amount of the reserve at the end of the year being withdrawn from the unfettered control of the company and being held in trust for the benefit of contract holders; and the practical effect of this was to decrease by such amount the income of the year available for ordinary purposes. Furthermore, income tax had already been paid on the amount held in reserve prior to the passage of the statute; and, to add any part of this amount to the premiums collected in the year 1936, for the purpose of determining underwriting income for that year, would result in its being taxed twice. The amount deducted as unearned premiums does not, of course, escape taxation, since it is subjected to tax as it is released from

the reserve pursuant to the provisions of the statute.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.