THE WAYNE TITLE & TRUST COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25318. Promulgated April 30, 1951.

*Charles S. Jacobs, Esq.,* for the petitioner.
*Lester H. Salter, Esq.,* for the respondent.

926

OPINION.

VAN FOSSAN, *Judge:* Under the applicable provisions of the State of Pennsylvania Insurance Company Law [1] petitioner was required to, and did, set aside in a reinsurance reserve fund during the taxable year an amount equal to 10 per cent of the title insurance premiums received by it. When a title insurance premium was received from a customer it was first deposited in a separate "Settlement Suspense Account" together with purchase money to be held in escrow, recording fees and other funds received on settlement. This account was under the supervision and control of petitioner's Title Department. At the end of each month an authorized person drew a check on this account for an amount equal to 10 per cent of all title insurance premiums received during that month. This check was then delivered to petitioner's Trust Department. The Trust Department in turn deposited the check in petitioner's trust fund account with the Girard Trust Company of Philadelphia, Pennsylvania, and credited such deposit on its trust books to an account entitled "Title Insurance Reserve, Corpus of Estate (Principal Cash and Investments)." The amount so set aside during the year here involved as representing a sum equal to 10 per cent of the total premiums collected was $2,018.23. In his

---

[1] PURDON'S PENNSYLVANIA STATUTES ANNOTATED, Title 40, Sec. 900.—Establishment and maintenance of reinsurance reserve fund.

Each company, which shall possess the power to insure owners of real property, mortgagees, and others interested in real property, from loss by reason of defective titles, liens, and encumbrances, shall establish and maintain a reinsurance reserve fund, by setting aside a sum equal to ten per centum of the premium (that is the sum charged for insurance over and above examination and settlement fee) paid on each policy which such company may hereafter issue, until the total amount set aside (including any reserve heretofore set up under any prior act of Assembly) shall equal the sum of two hundred fifty thousand dollars; and thereafter shall set aside a sum equal to five per centum of such premiums, until the total amount shall equal a sum not less than five hundred thousand dollars: Provided, That such premiums shall not be less than one-quarter of one per centum on the amount of insurance as issued, or, if less than one-quarter of one per centum, the amount set aside shall be equal to two and one-half per centum of said one-quarter of one per centum, provided that the total reserve fund or amounts in excess of that required by the foregoing provisions may be set aside at any time, or from time to time, out of such surplus or undivided profits as may be available for that purpose, in accordance with existing law or the regulations of the Department of Banking; and provided further, that any company, which at the time of the effective date of this act has set aside and is maintaining an insurance reserve fund as required by the act of April 26, 1929 (Pamphlet Laws, 834),[1] is hereby empowered to use the same as part of the reserve required to be set up and maintained by this act. The reserve fund set up by any company shall be maintained as herein provided, so long as any policies shall be outstanding.

[1] Sections 151–159 of this title.

notice of deficiency respondent disallowed this amount as a deduction from petitioner's gross income.

Since a relatively minor portion of its gross income for the taxable year was derived from its title insurance business, petitioner has asserted that it is not an insurance company for Federal tax purposes and that section 204 of the Internal Revenue Code has no application here. Rather, it has taken the position that the general provisions of the Code pertaining to corporations are applicable to it and now argues that the amount in dispute did not, in the first instance, constitute a part of its gross income within the meaning of section 22 (a) of the Internal Revenue Code.[2] Alternatively, it urges that should such an amount be considered income, it is then deductible therefrom as an ordinary and necessary business expense under section 23 (a) (1) (A) of the Internal Revenue Code.[3]

The name of a corporation, its charter powers and its subjection to State insurance laws are significant in determining the business which it is empowered and intends to carry on. However, the character of the business actually done during the taxable year is purely a question of fact and is determinative of whether the corporation is to be taxed as an insurance company under the Internal Revenue Code. *Bowers* v. *Lawyers' Mortgage Co.*, 285 U. S. 182. Here the record shows that petitioner carried on as its chief activity a general banking and trust business and that the insurance business was but a minor part of its total business. The amount set apart as a reinsurance reserve, in accordance with the Pennsylvania statutes, was $2,018.23. This sum represented 10 per cent of the total insurance premiums received by petitioner. It takes but elementary arithmetic to determine that the entire amount realized from petitioner's insurance business was $20.182.30, and that this figure is but 9.44 per cent of its total income of $213,680.88 for the taxable year. The insurance business being

---

[2] SEC. 22. GROSS INCOME.

(a) GENERAL DEFINITIONS.—"Gross income" includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. In the case of Presidents of the United States and judges of courts of the United States taking office after June 6, 1932, the compensation received as such shall be included in gross income; and all Acts fixing the compensation of such Presidents and judges are hereby amended accordingly. In the case of judges of courts of the United States who took office on or before June 6, 1932, the compensation received as such shall be included in gross income.

[3] SEC. 23. DEDUCTIONS FROM GROSS INCOME.

In computing net income there shall be allowed as deductions:

(a) EXPENSES.—

(1) TRADE OR BUSINESS EXPENSES.—

(A) In General.—All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, * * *.

such a small part of petitioner's total activity, petitioner is not entitled to classification as an insurance company within the meaning of the Internal Revenue Code nor the respondent's regulations. *Bowers* v. *Lawyers' Mortgage Co., supra.* See, also, Regulations 111, section 29.3797–7, and *Columbia Title Insurance Co.*, 3 T. C. 1099.

In support of its primary contention that the amount in question was not income, petitioner maintains that the $2,018.23 deposited in the reinsurance reserve fund was received by it to be held in trust for the benefit of its policyholders. It points to the line of so-called "cemetery cases" for the proposition that the amounts so received are excludible from the gross income of the recipient.

It has long been held that if there is a legally valid and recognizable trust, whether expressed or implied, created by a cemetery association to provide a means for the permanent care of a cemetery lot or crypt and a prescribed part of the purchase price of such lot or crypt can be said to be received in trust for that purpose, such part is then impressed with a trust and so much of the association's gross receipts is thus removed from its taxable income. *Commissioner* v. *Cedar Park Cemetery Association, Inc.*, 183 F. 2d 553; *Portland Cremation Association* v. *Commissioner*, 31 F. 2d 843; *American Cemetery Co.* v. *United States*, 28 F. 2d 918; *Mountain View Cemetery Association*, 35 B. T. A. 893; *Community Mausoleum Co.*, 33 B. T. A. 19; *Woodlawn Cemetery Association*, 28 B. T. A. 882; *Acacia Park Cemetery Association, Inc.*, 27 B. T. A. 233; *Evergreen Cemetery Association of Chicago*, 21 B. T. A. 1194; *Inglewood Park Cemetery Association*, 6 B. T. A. 386; *Los Angeles Cemetery Association*, 2 B. T. A. 495; *Troost Avenue Cemetery Association*, 4 B. T. A. 1169. "The vital question in these * * * cases is whether payments are impressed with a trust. The money must be impressed with a trust when received; it is unimportant that a reserve is set up or that a trust is afterwards set up * * *." 2 Merten's Law of Federal Income Taxation, sec. 12.71. This brings us to the narrow question of whether the disputed amount was impressed with a trust at the time it was received by petitioner. The facts here do not indicate that the funds received by petitioner were so impressed.

In the cases cited the arrangement giving rise to the trust was concluded between the taxpayer-cemetery association and its payor-vendee. Here, petitioner's policyholder was party to no such arrangement. The funds were deposited in the reinsurance reserve fund and the "trust" arose by virtue of the Pennsylvania statute. Furthermore, in the cemetery cases the amount deposited to be held in trust could never at any time become a part of the taxpayer's general assets. The income therefrom could never inure to its benefit, but

had to be used to provide certain services which the taxpayer had obligated itself to render. Here, the income derived from the funds held in reserve becomes à part of petitioner's general assets and if a policy was canceled the company which shall have issued such policy of title insurance could withdraw so much of the fund as constituted that policy's reserve. 40 Purdon's Pennsylvania Statutes, Annotated, 901, 903. Moreover, the Pennsylvania statute involved does not impress with a trust the specified percentages of premiums paid but rather provides for the accumulation of a reinsurance reserve fund from deposits made which are *equal* to a certain specified percentage "of the premium paid on each policy which such company may * * * issue" until a certain amount is thus amassed. This amount may be accumulated by any one or all of the following ways:

1. By setting aside the specified percentages of premiums paid as noted above.

2. By use of the reserve fund accumulated under Title 40, sections 151–159, prior to the passage in 1937 of the existing statute.

3. By setting aside at any time or from time to time, out of such surplus or undivided profits as may be available for that purpose in accordance with existing law or the regulations of the Department of Banking. 40 Purdon's Pennsylvania Statutes, 900, *supra.*

Thus, it is clear that the money collected as premiums is not impressed with a trust when received. And, as pointed out above, it is unimportant that a trust may be later set up. The full amount of the premiums collected were income to petitioner and must be reported as such.

In the alternative, petitioner contends that, as a condition to doing business, it is required to accumulate the reserve under discussion and that it is entitled to deduct the amounts deposited in such reserve as an ordinary and necessary business expense under section 23 (a) (1) (A), *supra.* We do not agree.

The reserve here involved is a reserve for reinsurance. "Reinsurance is a contract whereby one for a consideration agrees to indemnify another, either in whole or in part, against a loss or liability, the risk of which the latter has assumed. * * *" 1 Couch on Insurance, Sec. 44. It follows that a reserve for reinsurance maintained by an insurance company is analogous to a reserve for insurance maintained by a taxpayer which is not an insurance company. A company maintaining such a reserve is really a self-insurer until such time as it actually insures or reinsures itself against loss. Further, a reserve of this nature is in essence a reserve against a contingent liability, and it is well settled that amounts deposited in a reserve to cover a contingent liability may not be deducted until such liability becomes fixed. *Lucas* v. *American Code Co.*, 280 U. S. 445; *Brown* v. *Hel-*

*vering*, 291 U. S. 193; *Lane Construction Corp.*, 4 B. T. A. 1133. Likewise, amounts set aside as insurance funds are not deductible despite the fact that the taxpayer may be required by State law to carry insurance or act as a self-insurer. *Spring Canyon Coal Co.*, 13 B. T. A. 189, affd., 43 F. 2d 78, certiorari denied, 284 U. S. 654; *American Title Co.*, 29 B. T. A. 479, affd., 76 F. 2d 332.

While the primary purpose of the reserve in this case is to protect the interests of petitioner's policyholders, as pointed out above, the principal of the reserve is available to discharge petitioner's legal obligations to such policyholders and the income therefrom is available to satisfy its legal obligations generally. No deduction may be taken since there has been no real expense incurred.

Accordingly, the respondent's determination will not be disturbed.

*Decision will be entered for the respondent.*