HOUSTON TITLE GUARANTY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 48482.   Filed July 30, 1954.

*C. M. Hudspeth, Esq.,* for the petitioner.
*Paul M. Newton, Esq.,* for the respondent.

OPINION.

BLACK, *Judge:* It is agreed by both parties that petitioner, during the taxable year 1949, was engaged in the title insurance business and was subject to Federal income tax under the provisions of section 204, Internal Revenue Code. The applicable portions of section 204 of the Code are printed in the margin.[1]

The question which we are called upon to decide is this: Is the total amount of premiums received in 1949 by petitioner, a title insurance company, includible in its gross income under section 204 without any exclusion or deduction therefrom for an addition made by it

---

[1] SEC. 204. INSURANCE COMPANIES OTHER THAN LIFE OR MUTUAL.

(a) IMPOSITION OF TAX.—

(1) IN GENERAL.—There shall be levied, collected, and paid for each taxable year upon the normal-tax net income and upon the corporation surtax net income of every insurance company (other than a life or mutual insurance company) * * * taxes at the rates specified in section 13 or section 14 (b) and in section 15 (b).

* * * * * * *

(b) DEFINITION OF INCOME, ETC.—In the case of an insurance company subject to the tax imposed by this section—

(1) GROSS INCOME.—"Gross income" means the sum of (A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, computed on the basis of the underwriting and investment exhibit of the annual statement approved by the National Convention of Insurance Commissioners, and (B) gain during the taxable year from the sale or other disposition of property, and (C) all other items constituting gross income under section 22; * * *

(2) NET INCOME.—"Net income" means the gross income as defined in pargaraph (1) of this subsection less the deductions allowed by subsection (c) of this section;

* * * * * * *

(4) UNDERWRITING INCOME.—"Underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred;

(5) PREMIUMS EARNED.—"Premiums earned on insurance contracts during the taxable year" means an amount computed as follows:

From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance. To the result so obtained add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year. * * *

* * * * * * *

(7) EXPENSES INCURRED.—"Expenses incurred" means all expenses shown on the annual statement approved by the National Convention of Insurance Commissioners, and shall be computed as follows:

To all expenses paid during the taxable year add expenses unpaid at the end of the taxable year and deduct expenses unpaid at the end of the preceding taxable year. For the purpose of computing the net income subject to the tax imposed by this section there shall be deducted from expenses incurred as defined in this paragraph all expenses incurred which are not allowed as deductions by subsection (c) of this section.

(c) DEDUCTIONS ALLOWED.—In computing the net income of an insurance company subject to the tax imposed by this section there shall be allowed as deductions:

(1) All ordinary and necessary expenses incurred, as provided in section 23 (a);

* * * * * * *

(10) Deductions (other than those specified in this subsection) as provided in section 23;

during that year to a reserve of indefinite duration required by Texas law and measured by a stated percentage of the gross premiums collected?

It is clear that, under section 10 of article 1302a of the Revised Civil Statutes of Texas, petitioner was required to set aside as a reserve 5 per cent of its gross premiums collected in each year. In compliance with this provision of the statute, petitioner did set aside in 1949, 5 per cent of its gross premiums collected to be added to the reserve already carried on its books as "Guaranty Loss Reserve." The amount of this addition was $8,143.77, and petitioner deducted it as an operating expense. If section 204 of the Code provided for the deduction of additions to taxpayer's reserves which were made in compliance with law, then unquestionably petitioner would be entitled to the deduction which it claims, but not as an operating expense. But section 204 provides no such deduction to the class of insurance companies which are taxable under the provisions of that section. That fact is made clear by the Court of Appeals for the Second Circuit in *City Title Ins. Co.* v. *Commissioner*, 152 F. 2d 859, affirming a Memorandum Opinion of this Court. In that case the court said:

> The revenue statute expressly provides, in sections 202 and 203, * * * Int. Rev. Code, that, as to certain insurance companies, percentages of certain reserve funds, including some required by a state statute, may be deducted from gross income. No similar deduction is referred to in section 204, which governs here. Consequently, the existence of a reserve or the mere fact that it was required by a state statute, cannot justify the deduction taxpayer claimed. The sole issue here, then, is whether the sums set apart in the reserve are "unearned premiums."

Such is the issue we have in the instant case. Does the $8,143.77 in question represent unearned premiums? We think not.

In *American Title Co.*, 29 B. T. A. 479, we held that premiums paid a title insurance company for policies guaranteeing land titles are earned when paid and constitute gross income under section 204 of the Revenue Act of 1928 and a reserve set up to meet future liabilities under title insurance policies is not deductible from gross income. We were affirmed by the Court of Appeals for the Third Circuit, see 76 F. 2d 332.

Since *American Title Co.*, *supra*, there have been other cases which have allowed, under the facts and circumstances there present, the taxpayer title insurance company to deduct additions to its reserves as unearned premiums. Among these cases are: *Title & Trust Co.*, 15 T. C. 510, affirmed per curiam (C. A. 9) 192 F. 2d 934; *United States* v. *Pacific Abstract Title Company*, (C. A. 9) 192 F. 2d 934; *Early* v. *Lawyers Title Ins. Corporation*, (C. A. 4) 132 F. 2d 42. The holding of the cases to which reference is made above is to the effect that,

under certain circumstances, a portion of the premiums may be considered as unearned when received if given by law or contract that status for a definite period of time. The leading case establishing that principle is *Early* v. *Lawyers Title Ins. Corporation, supra,* wherein the court distinguished the *American Title Co.* case, *supra,* though recognizing the validity of the general rule established therein. The *Lawyers Title* case involved a title insurance company operating under Virginia law. The Virginia statute required a reservation of 10 per cent of the original premiums and an amortization of that premium on a specified formula over the period of risk, with the write-off largest in the early years when the risk is presumably the greatest. If no time was specified in the contract, the statute provided that the risk would be deemed to be for 20 years. The law, as quoted in the court's opinion, further provided:

Said sums, herein required to be reserved for unearned premiums on contracts of title insurance, shall at all times and for all purposes be considered and constitute unearned portions of the original premiums. * * *

The court held that the Virginia statute actually gave to that part of the premiums the status of being unearned and that until the times limited in the statute had expired, the premiums were held in trust for the benefit of the policyholders.

It is immediately apparent that the distinction in the two lines of cases hinges upon the particular State law involved. As the court in *Early* v. *Lawyers Title Ins. Corporation, supra,* said:

We must look to the law of the state to determine the nature of the interest which the company has in the portions of the premiums reserved. Having determined this, we look to the federal statute to determine whether such interest is taxable thereunder. * * *

In *Title & Trust Co., supra,* we said:

Deductibility of the statutorily prescribed reserves out of title insurance premium income thus turns on whether the local statute calls for a mere insolvency reserve of indefinite duration or whether the required reserve is established by segregating a portion of the premium income for a specified period when the risk of loss is presumably greatest. In the latter instance, the reserve becomes taxable income to the company when it is released for general corporate purposes at the expiration of the prescribed period. *Commissioner* v. *Dallas Title & Guaranty Co.*, 119 Fed. (2d) 211.

As we construe the Texas statute, section 10, article 1302a, under which petitioner was required to accumulate 5 per cent of its premium receipts into a reserve fund until the amount of the fund reached $100,000, the reserve is an insolvency reserve of indefinite duration and it is impossible to tell when, if ever, any part of the reserve will be released as "free assets" for general corporate purposes. Such a reserve, therefore, does not represent unearned premiums within the

meaning of such cases as *Early* v. *Lawyers Title Ins. Corporation,* *supra.*

In addition to *American Title Co., supra,* and *City Title Ins. Co.* v. *Commissioner, supra,* the Commissioner cites and relies upon *Wayne Title & Trust Co.* v. *Commissioner,* 195 F. 2d 401, affirming 16 T. C. 924, and *Philadelphia Title Insurance Co.,* 17 T. C. 1068, affirmed per curiam 199 F. 2d 308.

We agree with the Commissioner that the facts in the instant case bring it within the ambit of *American Title Co., supra,* and that line of cases, and it does not fall within the ambit of that group of cases of which *Early* v. *Lawyers Title Ins. Corporation, supra,* is the leading case. We, therefore, decide the issue involved in favor of the Commissioner and sustain the deficiency.

Both the taxpayer and the Commissioner have made some reference in their briefs to *Commissioner* v. *Dallas Title & Guaranty Co.,* 119 F. 2d 211, by the Court of Appeals for the Fifth Circuit. We do not think that case is directly in point here for either party. *Dallas Title & Guaranty Co.,* 40 B. T. A. 1022, which was reversed by the Fifth Circuit did not involve, except perhaps indirectly, the deductibility of additions to the taxpayer's reserves. It involved the question as to whether $40,000, which the taxpayer in 1934 transferred from an account on its books carried as "Reserves for Unearned Premium" to its undivided profits account, should be taken into income in the year of transfer. The Fifth Circuit's decision rested largely on the principle of estoppel as applied against a taxpayer who, during the years 1912 through 1927, had excluded from gross income that portion of its premiums which it had annually placed in a reserve under Texas law existing prior to 1929, and then, in 1934, when it transferred a part of the fund to undivided profits, attempted to argue that the amounts added to the reserve should have been treated as earned in those prior years and, hence, could not be taxable in 1934. The court held against this contention on the ground of estoppel. We have examined carefully our opinion in *Dallas Title & Guaranty Co., supra,* and the Fifth Circuit's opinion which affirmed us in part and reversed us in part, and we do not think there is anything either in our own holding or in the Fifth Circuit's holding which is contrary to what we have held here. In *Dallas Title & Guaranty Co., supra,* we said:

It is now settled, however, that premiums paid a title insurance company are earned when paid and constitute gross income when received, and that reserves set up to meet future liabilities under title insurance policies are not deductible from gross income. *American Title Co.,* 29 B. T. A. 479; affd., 76 Fed. (2d) 332. * * *

We still think that is a correct statement of the law as governs additions to a title company's reserves as required by section 10, article 1302a, Revised Civil Statutes of Texas. As we have already stated, we

do not think anything to the contrary was decided in *Commissioner* v. *Dallas Title & Guaranty Co.*, *supra*.

*Decision will be entered for the respondent.*