TITLE & TRUST COMPANY OF FLORIDA, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 749-68.    Filed August 28, 1972.

*Kenneth G. Anderson,* for the petitioner.
*Robert J. Shilliday,* for the respondent.

#### OPINION

SCOTT, *Judge:* Respondent determined deficiencies in petitioner's income taxes for the taxable years 1962, 1963, and 1964, in the amounts of $58,103.84, $8,381.01, and $8,587.10, respectively. The issue for decision is whether petitioner is entitled to deduct from its underwriting income in the year 1965 the total unearned-premium reserve accumulated on its books during the years 1959 through 1964 and carry back to the years 1962 through 1964 the net operating loss created by that deduction. In the alternative, petitioner contends that it is entitled to deduct the unearned-premium reserve set up on its books for each year in issue or to deduct in 1967 the unearned-premium reserve accumulated as of December 31, 1964, and carry back the loss created by that deduction to the years 1964 and 1965.

All of the facts have been stipulated and these facts, including the

stipulated exhibits, are found accordingly. We will set forth herein only those facts necessary to an understanding of this opinion.

Petitioner, a Florida corporation since 1922, with its principal place of business when the petition in this case was filed, in Jacksonville, Fla., filed its Federal income tax returns for the years 1962 through 1965 and for the year 1967, with the district director of internal revenue, Jacksonville, Fla. Petitioner's books and records have at all times here pertinent been maintained on an accrual basis of accounting and its financial statements and Federal tax returns prepared on an accrual basis for the calendar year.

During the years 1959 through 1967, petitioner issued policies of title insurance on real property, as defined in section 624.0407, Florida Statutes.[1] During the years in issue, petitioner was subject to taxation under the provisions of section 831, et seq., I.R.C. 1954,[2] as an insurance company other than life or mutual.

In conducting its insurance business, petitioner was required to comply with all statutes of the State of Florida relating to title insurance and with applicable rules and regulations and orders and notices of the insurance commissioner of the State of Florida.

In 1959, the legislature for the State of Florida enacted section 625.111 of the Florida Statutes which provided in part as follows:

In addition to an adequate reserve as to outstanding losses as required under § 625.041, a title insurer shall maintain a guaranty fund or unearned premium reserve of not less than an amount computed as follows:

(1) Ten per cent of the total amount of risk premiums written in the calendar year for title insurance contracts shall be assigned originally to the reserve.

(2) During each of the twenty years next following the year in which the title insurance contract was issued, the reserve applicable to the contract may be reduced by five per cent of the original amount of such reserve.

Although petitioner derived risk premiums on title insurance contracts for the years 1959 and 1960, it did not establish an unearned-premium reserve with respect to risk premiums on title insurance contracts on its books until May 1961. Under date of May 3, 1961, petitioner's board of directors adopted a resolution creating such reserve for unearned premiums. This unearned-premium reserve was established in 1961 after an audit of petitioner's books had been conducted by the office of the commissioner of insurance for the State of Florida, for the years through 1960, and that office had issued to petitioner a

---

[1] Sec. 624.0407, now designated sec. 624.608, Fla. Stat. Ann. (1967), states as follows:
624.608    Title insurance defined
Title insurance is insurance of owners of property or others having an interest therein, or liens or encumbrances thereon, against loss by encumbrance, or defective titles, or invalidity, or adverse claim to title.

[2] All references are to the Internal Revenue Code of 1954.

report on the examination stating that such a reserve was required under section 625.111 of the Florida Statutes.

After establishing a premium reserve on its books in 1961 covering the years 1959 and 1960, petitioner each year thereafter computed and established annual additions to its unearned-premium reserve. For each of the years 1959 through 1967, petitioner added to its reserve 10 percent of the total amount of the risk premiums on title insurance contracts as unearned premiums. Also, for each of the years involved after 1959, petitioner restored to its income from the unearned-premium reserve an amount computed by reducing the reserve in each year following the year each policy was issued by 5 percent of the amount of reserve set up for the policy when issued.

For the years 1961 through 1967, petitioner's net additions to the unearned-premium reserve, the amounts restored to income, the net reserve addition, and the reserve balances were as follows:

| Year | 10 percent of premium reserve | Restored to income | Net reserve addition | Reserve balance |
| --- | --- | --- | --- | --- |
| 1961 | $24,419.02 | $1,196.63 | $23,222.39 | $46,570.82 |
| 1962 | 47,407.03 | 2,417.58 | 44,989.45 | 91,560.27 |
| 1963 | 48,565.16 | 4,787.93 | 43,777.23 | 135,337.50 |
| 1964 | 52,687.32 | 7,220.16 | 45,467.16 | 180,804.66 |
| 1965 | 53,855.91 | 9,846.59 | 44,009.32 | 224,813.98 |
| 1966 | 53,906.01 | 12,543.35 | 41,398.66 | 266,212.64 |
| 1967 | 59,699.36 | 15,238.65 | 44,424.91 | 310,637.55 |

Petitioner claimed no deduction for unearned premiums on its 1959 and 1960 Federal income tax returns. After the reserve for unearned premiums was established in 1961, petitioner filed claims for refund of its Federal income taxes for 1959 and 1960 based on deducting the reserves in 1959 and 1960 which it had set up on its books for those years in 1961. Respondent disallowed these claims, and petitioner filed suit for refund in the U.S. District Court for the Middle District of Florida. In the refund suit, petitioner claimed that it was entitled to deductions for unearned premiums for the years 1959 and 1960.

The U.S. District Court granted the motion for summary judgment of the United States and sustained the disallowance of the deductions for unearned premiums for the years 1959 and 1960. Petitioner appealed this judgment of the U.S. District Court for the Middle District of Florida to the U.S. Court of Appeals for the Fifth Circuit which sustained the judgment of the District Court in *Title & Trust Co. of Florida* v. *United States*, 360 F. 2d 285 (C.A. 5, 1966), affirming 243 F. Supp. 42 (M.D. Fla. 1965).

For the years 1961 through 1964, petitioner claimed a deduction in its

Federal income tax returns for the net addition to its unearned-premium reserve for each year, in amounts as follows:

| Year | Amount |
|------|--------|
| 1961 | $23, 222. 39 |
| 1962 | 44, 989. 45 |
| 1963 | 43, 777. 23 |
| 1964 | 45, 467. 16 |

Respondent disallowed these claimed deductions.

In the year 1965, the legislature for the State of Florida amended section 625.111 of the Florida Statutes to read in part as follows:

In addition to an adequate reserve as to outstanding losses as required under section 625.041, a title insurer shall establish, segregate and maintain a guaranty fund or unearned premium reserve of not less than an amount computed as follows:

(1) Ten per cent of the total amount of risk premiums written in the calendar year for title insurance contracts shall be assigned originally to the reserve.

(2) During each of the twenty years next following the year in which the title insurance contract was issued, the reserve applicable to the contract shall be reduced by five per cent of the original amount of such reserve. Said sums herein required to be reserved for unearned premiums on contracts of title insurance shall at all times and for all purposes be considered and constitute unearned portions of the original premiums and shall be held in trust for the benefit of policyholders.

In December 1965, after the Florida legislature amended section 625.111 of the Florida Statutes, petitioner adopted a resolution with respect to its unearned-premium reserve providing:

that the officers of the corporation are hereby directed to immediately and forthwith comply with Section 625.111 of the Florida Statutes, as amended, by establishing and hereafter maintaining in the amounts specified by said statute an unearned premium reserve and sufficient assets at least equal to all amounts previously allocated to the unearned premium reserve prior to June 25, 1965, in compliance with said Section 625.111, prior to being amended and to any and all amounts due to be allocated to said reserve by reason of any risk premiums received since June 25, 1965, shall be immediately segregated from the general assets of the corporation as and for such unearned premium reserve, and the officers shall henceforth maintain said segregated reserve in full compliance with said statute.

In December 1965, petitioner funded the reserve for unearned premiums by placing 20,000 shares of T & T Co. Abstract Co. stock in escrow, or trust, with the First Bank & Trust Co. The amount so placed in escrow was at least adequate in value to fund the reserve for unearned premiums on petitioner's books as of December 31, 1965.

About April 19, 1967, petitioner submitted a letter to the insurance commissioner of the State of Florida concerning unearned premiums on title insurance policies. In that letter, petitioner requested the insurance commissioner to issue a regulation or directive on the point of

whether it was mandatory or permissive that 5 percent of the portion of premiums reserved for title insurance policies issued between 1959 and 1964 be restored to the general funds of the corporation.

On July 14, 1967, the insurance commissioner issued the following directive to petitioner (a similar directive was mailed to other title insurers in Florida):

The Unearned Premium Reserve established by your company on its Title insurance policies must be handled in the following manner.

The amount of the unearned premium reserve established by a title insurer pursuant to Section 625.111, F.S., shall be reduced during each of the twenty years next following the year in which the title insurance contract was issued by five percent of the amount (ten percent of the risk premium) orginally assigned to the reserve, as required by Sub-section (2). The reduction shall be made for all title insurance contracts, of which ten percent of the risk premiums have been assigned to the reserve, issued during 1959 and in all subsequent years. In the event that any title insurer has not reduced the amount of its unearned premium reserve by five percent of any amount originally assigned to the reserve pursuant to Sub-section (1) of Section 625.111, F.S., for any given year since 1958, said title insurer shall effect such reduction in this calendar year, and shall thereafter reduce its unearned premium reserve in accordance with Sub-section (2), Section 625.111, F.S., for all title insurance contracts issued since 1958.

For the year 1965, petitioner claimed a deduction on its Federal income tax return in the amount of $224,813.98 for the accumulated net balance of its reserve for unearned premiums as of December 31, 1965. Petitioner as a result of this claimed deduction reported for its taxable year 1965 a net operating loss which it carried back to its taxable years 1962, 1963, and 1964 by filing net operating loss carryback claims for those years. The net operating loss carrybacks to the years 1962 through 1964 were tentatively allowed by respondent.

Respondent increased petitioner's income as reported for 1965 by disallowing $170,958.07 of the $224,813.98 accumulated balance of unearned-premium reserve as of December 31, 1965, allowing only the $53,855.91 representing the 10 percent of the premiums reserved in 1965. Because of the disallowance of $170,958.07 of the deduction claimed by petitioner in 1965 for unearned-premium reserve, respondent determined deficiencies in petitioner's income tax for 1962, 1963, and 1964 because of disallowing the net operating loss carrybacks to those years from 1965 which he had previously tentatively allowed. In each of the years 1966 and 1967, petitioner claimed as a deduction its net reserve addition for the year and respondent did not disallow these claimed deductions.

Section 832(b)(1) provides that the "gross income" of an insurance company subject to taxation under section 831 shall consist of its "investment income" and "underwriting income" plus certain other items. Section 832(b)(3) provides that the term "underwriting income"

means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred. Section 832(b)(4) defines the term "premiums earned on insurance contracts during the taxable year" as follows:

(A) From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance.

(B) To the result so obtained, add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year.

This definition of "premiums earned on insurance during the taxable year" has been in the revenue statutes since the enactment of the Revenue Act of 1921. See *Bituminous Casualty Corp.*, 57 T.C. 58, 78 (1971).

It is well established that a premium reserve which a title insurance company is required by State law or regulation to set up and hold for a specified period solely for the purpose of discharging its liability under its policies constitutes "unearned premiums" within the meaning of section 832(b)(4)(B) during the period that the reserve is unavailable to the company for its ordinary purposes. *Early v. Lawyers Title Ins. Corporation*, 132 F. 2d 42 (C.A. 4, 1942). During the time that the company is required to hold the reserve the percent of the premiums required to be placed in the reserve is "held in trust for the benefit of the contract holders" and does not become income to the company until it is restored to income upon the expiration of the time the State statute requires it to be held. *Early v. Lawyer Title Ins. Corporation, supra.* As we pointed out in *Houston Title Guaranty Co.*, 22 T.C. 989, 993 (1954), whether a premium reserve constitutes "unearned premiums" within the meaning of section 832(b)(4)(B) or is merely a nondeductible insolvency reserve depends on whether the State statute requires the segregation of the reserve for a specified time when the risk insured is greatest, and its release for general use of the company at the expiration of that time, thus causing the released portion to become taxable income or whether the reserve is of indefinite duration and never actually outside the use and control of the company.

The primary basis of the decision of the District Court holding that petitioner was not entitled to deduct its premium reserves as unearned premiums for the years 1959 and 1960 was that the Florida statute did not set a mandatory time within which the reserve should be restored to income. *Title & Trust Co. of Florida v. United States*, 243 F. Supp. 42 (M.D. Fla. 1965), affirmed per curiam 360 F. 2d 285 (C.A. 5, 1966).[3] It was apparently on this same basis that respondent disal-

---

[3] The appeals court affirmed on the second basis of the District Court's decision which was that the reserve had not actually been set aside in 1959 and 1960 since it was not established until May of 1961.

lowed the deduction claimed by petitioner for each of the years 1962, 1963, and 1964 for the net additions in each of those years to its premium reserve. Respondent recognizes that the Florida law as amended in 1965 required the restoration of the premium reserves to income over a 20-year period and therefore the net reserve for 1965 and subsequent years constitutes deductible unearned premiums.

Petitioner contends that its unearned premiums on outstanding business at the end of 1964 within the meaning of section 832(b)(4) was zero, since the reserves it had set aside prior to 1964 had been held not to constitute "unearned premiums." Petitioner contends that its unearned premiums on outstanding business at the end of 1965 was $224,813.98. Petitioner states that the very language of the Code section requires that it be allowed to deduct from its underwriting income for its taxable year 1965, the full amount of its outstanding unearned premiums at the end of 1965, or $224,813.98.

In the alternative, petitioner contends that it is entitled to deduct from its underwriting income for its taxable years 1962, 1963, and 1964, the annual additions to its unearned-premium reserve. As a second alternative, petitioner contends that the directive of the insurance commissioner of Florida issued to it in 1967 cured any and all defects in the amended legislation establishing unearned-premium reserves for title insurance companies thereby entitling it to deduct from its underwriting income for its taxable year 1967 as unearned premiums an amount equal to the difference between the full amount of its outstanding unearned-premium reserve at the end of 1967 and the sum of the amounts added to this unearned-premium reserve during the years 1965 and 1966.

As we pointed out in *Modern Home Fire & Casualty Insurance Co.*, 54 T.C. 839, 848 (1970), where under the governing State statutes it cannot be determined whether funds in a reserve will ever be released and returned to income, no part of the reserve is deductible. Therefore in order to decide the primary issue raised in this case, we must determine whether section 625.111 of the Florida Statutes as amended in 1965 required that unearned-premium reserves established under the law in effect from 1959 until amended in 1965 be returned to income by the insurance company.

Section 625.111 of the Florida Statutes as originally enacted in 1959 required that title insurance companies doing business in the State of Florida establish unearned-premium reserves. This legislation did not, however, provide for a mandatory return of funds in the unearned-premium reserve to the title insurance company's income. The pertinent section of the Florida statute states as follows:

During each of the twenty years next following the year in which the title insurance contract was issued, the reserve applicable to the contract *may* be

reduced by five per cent of the original amount of such reserve. [Emphasis supplied.]

Therefore the Florida statute prior to its amendment in 1965 did not authorize the creation of unearned-premium reserves for title insurance companies in Florida which would qualify under section 832(b)(4) as "unearned premiums" deductible from underwriting income. *Modern Home Fire & Casualty Insurance Co.*, *supra* at 848, and cases there cited. Petitioner is correct therefore in its position that the reserve on its books at December 31, 1964, did not constitute as of the time set up "unearned premiums" within the meaning of section 832(b)(4).

Petitioner contends that the fair interpretation of section 625.111 as amended in 1965 is that the return of the unearned-premium reserve to general corporate purposes and thus into taxable income is mandatory for all additions made to the reserve under the statute as enacted in 1959 and not merely for those additions made for 1965 and subsequent years.

After being amended in 1965, section 625.111 of the Florida Statutes required that "During each of the twenty years next following the year in which the title insurance contract was issued, the reserve applicable to the contract shall be reduced by five per cent of the original amount of such reserve." Since the 1965 Act amended the 1959 Act, petitioner contends that the reasonable interpretation of the amendment is that it applies to all reserves accumulated since 1959.

The unearned-premium reserve which existed on petitioner's books of account at the end of 1965 consisted both of the amount added by petitioner to the reserve in 1965 and the amount accumulated prior to 1965. Respondent concedes that the amended statute clearly required reserve additions for 1965 and subsequent years to be returned to income. Respondent has not disallowed petitioner's claimed deduction in 1965 for the reserve addition in that year. The amount disallowed by respondent was the additions for the years 1959 through 1964 which he contends the amended statute did not require to be returned to income. It is respondent's position that the Florida statute as amended did not require the return to income of the reserves set up prior to 1965.

The issue involved requires an interpretation of a Florida statute. Neither party has directed our attention to any decision by a Florida court, nor have we found a Florida case interpreting section 625.111 of the Florida Statutes as amended in 1965.

Petitioner points out that the directive of the insurance commissioner of July 14, 1967, interpreted the Florida law to require the restoration to income of all unearned-premium reserves established

during 1959 and the years thereafter.[4] We agree with petitioner that the directive of the insurance commissioner did interpret the Florida statute as amended in 1965 to require the return to income of premium reserves established from 1959 through 1964. Even though in situations where this had not been done by any company prior to 1967, the directive required that the return to income be made in 1967, it interpreted the amended section to require as of the date of its enactment in 1965 that the accumulations from 1959 to 1964 be returned to income.

As heretofore pointed out, neither party has cited a case nor have we found any cases from the courts of the State of Florida dealing with the interpretation of section 625.111 as made by the insurance commissioner in his 1967 directive. However, in our view the Supreme Court of Florida would hold that the 1967 directive of the insurance commissioner did not express an improper interpretation of section 625.111 as amended in 1965. The construction given a statute by the administrative agency charged with its enforcement and interpretation is entitled to great weight and the Florida courts generally will not depart from such an interpretation by a State agency except for the most cogent reasons. *Daniel* v. *Florida State Turnpike Authority*, 213 So. 2d 585 (Fla. 1968).

In our view, petitioner is correct in its contention that section 625.111 of the Florida Statutes as amended in 1965 required the return to income in the year 1965 of unearned-premium reserves established by title insurance companies from 1959 through 1964.

Respondent apparently does not contend that the reserve for prior years is not deductible in 1965 if the law required that the reserve for those years be restored to income in 1965. We held in *Title & Trust Co.*, 15 T.C. 510 (1950), affirmed per curiam 192 F. 2d 934 (C.A. 9, 1951), that a reserve meeting the requirement of unearned premiums as used in section 832(b) (4) (B) may be deducted in the year required by law to be set aside even though relating to or measured by premium income of prior years. It would follow from this holding that the fact

---

[4] Respondent argues that the July 14, 1967, directive is illegal since it was issued without the notice and hearing required by sec. 624.0124 of the Florida Statutes (enacted in 1959, now designated as sec. 624.325) which states any rule or regulation of the insurance commissioner shall be made only after a hearing, notice of which is given to all persons whose pecuniary interests are to be directly and immediately affected thereby.

In our view sec. 624.0107 of the Florida Statutes had been modified by the Florida Administrative Procedures Act of 1961 which unified the procedures to be used by agencies of the State of Florida including the office of the commissioner of insurance. See sec. 120.011 of the Florida Statutes and *Bay National Bank & Trust Co.* v. *Dickinson*, 229 So. 2d 302 (Fla. App. 1969). Under this act a public hearing is not required prior to the adoption of any rule by an administrative agency. See sec. 120.041, Fla. Stat. Ann., and *Bay National Bank & Trust Co.* v. *Dickinson, supra*. We think it so clear under Florida law that a directive of the type issued by the insurance commissioner on July 14, 1967, could be issued without a prior hearing, that we do not deem further discussion of respondent's contention to the contrary to be required.

that the reserve petitioner contends is deductible in 1965 was based on premium income of prior years, does not prohibit it from being deductible as unearned premiums in 1965.

Respondent makes some argument that the funds for the premium reserve were not placed in trust outside petitioner's control. In our view, the stipulated facts show otherwise.

We, therefore, sustain petitioner on its primary contention and do not reach petitioner's two alternative contentions.

*Decision will be entered for petitioner.*