APPEALS OF UNION UNDERWRITERS OF NEW YORK, UNDERWRITERS AT GREAT WESTERN LLOYDS, AND NATIONAL UNDERWRITERS OF AMERICA.

Docket Nos. 6037–6039.   Decided July 28, 1926.

In the case of an insurance company which retires from business and reinsures its policy risks, paying for such reinsurance an amount equal to the unearned premiums on the policies, the net decrease in reserves for unearned premiums is properly to be included in computing gross income.

*Clarence A. Miller*, *Esq.*, and *Robert O. Deyer*, *Esq.*, for the petitioners.
*John D. Foley*, *Esq.*, for the Commissioner.

Before GRAUPNER [1] and PHILLIPS.

Taxpayers appeal from determinations of deficiencies in income and profits taxes for 1919 as follows:

| | |
|---|---:|
| Union Underwriters of New York | $7, 413. 67 |
| Underwriters at Great Western Lloyds | 7, 644. 27 |
| National Underwriters of America | 2, 393. 28 |

The question of law involved in each case being the same, the cases were heard and submitted together.

FINDINGS OF FACT.

The taxpayers were, in 1919, voluntary associations with their offices in the City and State of New York, and engaged in writing fire insurance.
On January 1, 1919, the taxpayers had reserves for unearned premiums as follows:

| | |
|---|---:|
| Union Underwriters of New York | $50, 711. 04 |
| Underwriters at Great Western Lloyds | 49, 898. 18 |
| National Underwriters of America | 23, 548. 99 |

As of April 22, 1919, the taxpayers retired from the insurance business and reinsured the outstanding liability on all policy contracts with the United States Fire Insurance Co. As consideration for such reinsurance the taxpayers paid in cash the amount of the unearned premium reserve on all policies as of the date of reinsurance and on December 31, 1919, had no unearned premium reserve.

In computing the deficiencies the Commissioner included in gross income of the respective taxpayers the amount of their unearned premium reserve at the beginning of the period, and allowed as a deduction the amounts paid for reinsurance.

---

[1] This decision was prepared during Mr. Graupner's term of office.

## OPINION.

PHILLIPS: It is stipulated that the taxpayer associations are subject to income and profits taxes for 1919 as corporations.

The policies written by the taxpayers expired at various times. Premiums received covered insurance protection for a period subsequent to the calendar year in which payment was made. Under these circumstances the law permitted the taxpayers to set up reserves for the premiums paid to them but not earned during the taxable year. Any increase in the reserve was allowable as a deduction in computing net income. In this manner the insurance companies returned premiums as income in the year in which the premium was earned; not the year in which the premium became due or was paid.

The unearned premium reserves of these taxpayers as of January 1, 1919, represented the amounts of premiums already received, but to be earned in the future by the performance of the contract of insurance over such future period of time. During the year 1919 the taxpayers retired from the insurance business and reinsured the outstanding liability upon their policies. For such reinsurance the taxpayers paid amounts equal to the unearned premium reserve at the time of such insurance and these payments have been allowed as deductions by the Commissioner. The taxpayers accept the allowance of these deductions but protest the action of the Commissioner in making corresponding increases in income.

The transactions are susceptible of two methods of treatment, either of which leads to the same result. If the reinsurance of the risks took such a form that it is to be considered to result in a novation of contract, the insured releasing the original insurer and accepting a new insurer, we must hold that the unearned premium reserves were then earned by the taxpayers and are to be included in gross income.

If, on the other hand, the taxpayers still remain liable on their contracts of insurance, and the payments which they made are to be construed as consideration for a collateral agreement to indemnify them against loss, then we are of the opinion that a capital asset was purchased and that the Commissioner erred in allowing the deduction of that part of the payment which purchased reinsurance for any period beyond the taxable year. On that basis the taxpayers would be entitled to deduct only payments for reinsurance to be performed within the year, and would be required to include in net income premiums earned during the entire year.

In the present instance the amounts paid for reinsurance equal the reserves for unearned premiums at the time the reinsurance was written. Whatever theory be followed, the net result must be that these taxpayers are required to return as income the actual amounts

of premiums earned during the year, less the amounts paid for any reinsurance performed within the year. In the present instance this net result has been reached, for the amounts finally included by the Commissioner are the premiums earned by the respective taxpayers to the date when the reinsurance contracts became effective. After that date the taxpayers could sustain no profit or loss under their policies unless and until the reinsurer failed to perform its obligation.

The taxpayer relies upon that portion of the decision of the Supreme Court in *Maryland Casualty Co.* v. *United States*, 251 U. S. 342; 40 Sup. Ct. 155; 3 Am. Fed. Tax Rep. 3010, which holds that the amount deducted as a reserve " can be restored to income again only where it is clearly shown that subsequent business conditions have released the amount of them to the free beneficial use of the company in a real, and not in a mere bookkeeping sense." In that case the court had under discussion other reserves as well as those for unearned premiums, but, if we consider this language applicable to the present case, the test has been met. As we have pointed out, the net result of the Commissioner's action is to include in income only premiums earned during the year. Certainly these funds, whether received in cash or released from reserve, are available for the free beneficial use of the company, even to the payment of dividends therefrom. The result reached being correct, we need not determine whether the theory followed by the Commissioner was correct.

> *The deficiencies for 1919 are determined to be as follows: Union Underwriters of New York $7,413.67; Underwriters at Great Western Lloyds, $7,644.27; National Underwriters of America, $2,393.28. Orders of redetermination will be entered accordingly.*

SMITH concurs in the result only.