Massachusetts Fire & Marine Insurance Co., Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 20892.    Promulgated May 23, 1929.

*Harry W. Forbes, Esq.*, for the petitioner.
*John D. Foley, Esq.*, for the respondent.

626

GREEN: In its return for 1920 petitioner returned, as income, the sum of $389,129.59 as the taxable portion of the reduction in its reserve for unearned premiums. The sum so returned as income represented the difference between the estimated amount of the reserve at March 1, 1913, and the amount of the reserve at the beginning of 1920. The petitioner returned such portion of the reduction in its reserve as income, on the theory that the reinsurance of all its outstanding risks with the Great American Insurance Co. had resulted in releasing the entire reserve to the free beneficial uses of the company, and that it was taxable upon such portion of the released reserve as exceeded the amount of the reserve at March 1, 1913. The respondent has held that the entire amount of the reduction in the reserve, to wit, $800,121.90, is taxable. In its pleadings, the petitioner alleged that the respondent erred in holding that the entire reduction in the reserve is taxable income, contending that only the increase in the reserve since March 1, 1913, could be taxed as income. However, at the hearing, the petitioner raised the further point, apparently as an alternative proposition, that no part of the reduction in the reserve, which was occasioned by the reinsurance of all outstanding risks, could be properly considered as taxable income, since the company was not discharged from its liabilities, but still remained primarily liable to its policyholders upon its outstanding policies. Therefore, in connection with the first issue, two questions are presented for decision: (1) Did the reinsurance of all outstanding risks result in the releasing of the entire reserve for unearned premiums to the free beneficial use of the petitioner? and, (2) if so, is the whole amount of the released reserve to be treated as taxable income, or only such portion thereof as represents the increase in the reserve since March 1, 1913?

As to the first of these questions, the petitioner presented no evidence which might serve as a premise for consideration of the issue. The petitioner alleged in its petition, and the respondent admitted in his answer, that "The petitioner, at the close of the year 1920, reinsured all of its outstanding risks as of December 31, 1920, *thereby releasing the reserve for unearned premiums shown on its books*, amounting to $800,121.90." Further, we have found that, in its annual statement to the Department of Insurance, the petitioner reported no reserve for unearned premiums at December 31, 1920, and there is no evidence that this particular feature of that statement was in any way questioned by, or did not meet with the approval of, the Commissioner of Insurance. As a premise for the inclusion of the entire amount of the released reserve in income, the respondent determined that the reserve had been actually re-

leased to the free beneficial use of the petitioner, and such evidence as we have before us supports that determination.

As to the second question, it is the petitioner's contention that "to treat the amount of the reserve at March 1, 1913, as taxable income for the year 1920, would result either in taxing the Company for income and excess profits taxes at 1920 rates on premiums collected prior to March 1, 1913, which could not be done constitutionally and which the Revenue Acts in question did not purport to do, or in taxing the Company a second time on premiums which had already been reported and taxed once as income under those Acts." This contention of the petitioner is premised on the presumption that the reserve at March 1, 1913, was a part of the reserve released on December 31, 1920. Whether or not that is the case, is a question of fact that has not been proven. The reserve at March 1, 1913, existed in relation to the unearned premiums on policies outstanding on that date. If none of these policies were outstanding in 1920, then the reserve at March 1, 1913, could have formed no part of the reserve, which was released in 1920. The method of computing the reserve for unearned premiums required by the Insurance Department of Massachusetts, which is set out in the findings of fact, clearly shows that the reserve relates to policies outstanding at the close of the year. If any part of the released reserve related to policies outstanding on March 1, 1913, the petitioner has failed to establish the fact by proper proof.

In view of the foregoing, it seems unnecessary to answer the petitioner's contention that "insurance premiums, as well as any other income, actually collected prior to March 1, 1913, are not subject to taxation as income under the Revenue Acts; and the Revenue Acts did not purport to tax any income received prior to March 1, 1913, even though earned in whole or in part subsequent to that date." But if it needs an answer, no more effective one could be made than that of the United States Supreme Court in *Maryland Casualty Co.* v. *United States*, 251 U. S. 342, when, in considering the Government's claim that the net reduction in the reserves required by law is to be considered as income of the year in which the decrease occurred, the court stated as follows:

The statute does not in terms dispose of the question thus presented.

Reserves, as we have seen, are funds set apart as a liability in the accounts of a company to provide for the payment or reinsurance of specific, contingent liabilities. They are held not only as security for the payment of claims, but also as funds from which payments are to be made. The amount "reserved" in any given year may be greater than is necessary for the required purposes, or it may be less than is necessary, but the fact that it is less in one year than in the preceding year does not necessarily show either that too much or too little was reserved for the former year—it simply shows that the aggregate reserve requirement for the second year is less than for the first, and this

may be due to various causes. If, in this case, it were due to an overestimate of reserves for 1912, with a resulting excessive deduction for that year from gross income and if such excess was released to the general uses of the company and increased its free assets in 1913, *to that extent it should very properly be treated as income in the year in which it became so available, for the reason that in that year, for the first time, it became free income, under the system for determining net income provided by the statute, and the fact that it came into the possession of the company in an earlier year in which it could be used only in a special manner, which permitted it to become nontaxable would not prevent its being considered as received in 1913 for the purposes of taxation, within the meaning of the act.* (Italics ours.)

No evidence was offered by petitioner in support of the assignment of error that respondent erroneously computed the profits taxes under section 328 of the Revenue Act of 1918, by the use of improper comparatives, so that respondent's determination must prevail.

Reviewed by the Board.

*Judgment will be entered for the respondent.*