CENTRAL NATIONAL FIRE INSURANCE COMPANY, PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 22614. Promulgated April 3, 1931.

*Walter E. Barton, Esq.*, and *Raymond C. Cushwa, Esq.*, for the petitioner.

*H. B. Hunt, Esq.*, for the respondent.

OPINION.

VAN FOSSAN: There are for our determination only two questions, namely, (1) whether or not respondent erred in including in gross income the sum of $91,670.88, or any other sum, representing a portion of the unearned premium reserve account which petitioner contends was transferred from paid-in surplus; and (2) whether or not respondent erred in failing to deduct from gross income for the year 1922 a net loss sustained by petitioner in 1921.

Petitioner, by means of an arbitrary allocation, has determined that 25.61 per cent, or $91,670.88 of the total premium reserve of $357,949.55 as of December 31, 1921, represents transfers from paid-in surplus made to restore deficiencies in the premium reserve caused by current operating losses during the years 1918, 1919, and 1920, and contends that this amount should not be taxed as income. Thus arises the first issue.

The unearned premium reserve of petitioner as of December 31, 1921, represented a certain proportion fixed by law of the aggregate gross premiums written in all policies in force, less deductions for reinsurance. In insurance practice and in conformity with legal requirements, this sum is set aside at once on receipt and varies only by reason of fluctuations in the amount of insurance in force. Otherwise it remains intact. At the end of each year if income exceeds expenses the difference is added to surplus; if the expenses exceed income the deficit or loss reduces surplus. Petitioner suffered losses through several years and claims that these losses were charged first against the unearned premium reserve, thereby reducing it below the legal requirement, and that this deficiency in the premium reserve was then restored by transfer from paid-in surplus. Obviously, such a devious transaction, if indulged in, would be simply a matter

of bookkeeping entries and could not be permitted to obscure the true situation. If permitted, the procedure proposed by petitioner would permit an insurance company to avoid permanently the payment of taxes on that part of its unearned premium reserve so employed.

The practical effect would be to convert part of the premium reserve (on which no taxes have been paid) to the capital account without passing through the income account. That approval can not be given to such a proposal is obvious.

There is a further reason why the decision on this point must be against petitioner. The evidence does not satisfactorily establish that the corporation actually followed the practice for which petitioner contends.

For these reasons we hold that respondent did not err in adding to petitioner's income for 1922 the entire sum of $357,949.55, which was the total amount of petitioner's unearned premium reserve at December 31, 1921. In that year the total reserve was released to general corporate uses and became taxable. *Union Underwriters of New York*, 4 B. T. A. 472; *Commercial National Insurance Co.*, 12 B. T. A. 655; *Massachusetts Fire & Marine Insurance Co.*, 16 B. T. A. 625.

Passing to the second question, petitioner alleges that in 1921 it sustained a net loss of $60,126.99 which it was entitled to carry forward and deduct from gross income for the year 1922. In its brief petitioner reduced this amount to $22,511.93. Respondent has conceded that petitioner sustained a net operating loss in 1921 and that this loss is deductible from gross income for 1922

In its annual statement filed with the Commissioner of Insurance of the State of Iowa for the year ended December 31, 1921, petitioner showed a decrease in net worth amounting to $22,511.93. However, in computing the amount of this decrease the petitioner included the sum of $15,404.29, which is the amount by which certain so-called " non-admitted assets " exceeded the amount of such assets deducted in its annual statement for 1920. These " non-admitted assets " consisted of certain agency balances and past-due bills receivable which were taken for premiums. There is no evidence that these accounts had been ascertained to be worthless either in whole or in part. On the contrary, so far as the evidence shows, the so-called " non-admitted assets " were good accounts, although the Commissioner of Insurance of the State of Iowa, under the law, could not admit them in the corporate financial statement when determining the profits of the insurance company. It does not follow that though falling under the statutory definition of " non-admitted assets " the value of these assets should be charged off for income tax purposes. Worthlessness is a fact to be proved and is not to be assumed because of an arbitrary classification under a State statute regulating insurance companies.

In determining its operating loss for 1921 petitioner also deducted an item of $744.07 entered in its books as the cost of an improvement to real estate. So far as the proof shows, this cost of improvement to real estate is a capital charge. In our opinion, therefore, in order to determine petitioner's net operating loss in 1921, the total of these two items, namely, $16,148.36, must be deducted from the amount of net operating loss shown in petitioner's annual statement for 1921, namely, $22,511.93. With this adjustment petitioner's net operating loss for 1921 amounted to $6,363.57. This loss was not deducted from gross income by respondent in computing petitioner's net income. It follows that the petitioner is entitled to a deduction from income in 1922 of its net operating loss sustained in 1921 in the sum of $6,363.57.

*Judgment will be entered under Rule 50.*