THE BUCKEYE UNION CASUALTY COMPANY AND SUBSIDIARY, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

THE BUCKEYE UNION FIRE INSURANCE COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 4997–67, 4998–67. Filed January 14, 1970.

14

*John W. Christensen*, *George D. Massar*, and *Richard J. Brentlinger*, for the petitioners.

*Conley G. Wilkerson*, for the respondent.

18

20

OPINION

This case presents for the first time the issue of the application of section 337 [6] to the liquidation of an insurance corporation. Section 337 was enacted to eliminate the uncertainties attendant upon the Supreme Court decisions in *Commissioner* v. *Court Holding Co.*, 324 U.S. 331 (1945), and *United States* v. *Cumberland Pub. Serv. Co.*, 338 U.S. 451 (1950), in regard to the question of whether a sale of assets prior to a corporate liquidation was accomplished by the corporation or its shareholders. *Frank W. Verito*, 43 T.C. 429 (1965). The statutory solution embodied in section 337 was to eliminate the recognition of gain or loss to the corporation from the sale or exchange of its property during the 12-month period following the adoption of a plan of complete liquidation, if within that period the corporation distributes its assets in complete liquidation.

In the instant case, petitioners adopted plans of complete liquidation and within 12 months thereafter disposed of their insurance businesses to Continental Buckeye and distributed their assets in complete liquidation. Petitioners contend that the gain realized by them, pursuant to their transaction with Continental Buckeye, is shielded from recognition by section 337. Respondent, on the other hand, contends the $10,676,071.52 gain realized under the reinsurance and assumption agreement is not subject to section 337 because it did not arise from the "sale or exchange of property." [7] Respondent characterizes the transaction as a reinsurance arrangement with the amount

---

[6] All section references are to the Internal Revenue Code of 1954, as amended.
SEC. 337. GAIN OR LOSS ON SALES OR EXCHANGES IN CONNECTION WITH CERTAIN LIQUIDATIONS.
(a) GENERAL RULE.—If—
(1) a corporation adopts a plan of complete liquidation on or after June 22, 1954, and
(2) with the 12-month period beginning on the date of the adoption of such plan, all of the assets of the corporation are distributed in complete liquidation, less assets retained to meet claims,
then no gain or loss shall be recognized to such corporation from the sale or exchange by it of property within such 12-month period.

[7] Respondent concedes that the $5,700,000 received by the petitioners for goodwill under the supplemental agreement represents the proceeds of the sale of an intangible asset entitled to nonrecognition under sec. 337.

equal to 35 percent of the unearned premium reserve being either underwriting income under section 832 [8] or income from the release of reserves to the free and beneficial use of the companies. *Union Underwriters of New York, et al.,* 4 B.T.A. 472 (1926); *Massachusetts Fire & Marine Insurance Co.,* 16 B.T.A. 625 (1929); and *Central National Fire Insurance Co.,* 22 B.T.A. 1054 (1931).

We agree with respondent's contention. As consideration for reinsuring its policy risks, petitioners transferred to Continental $19,826,989.97, which was an amount equivalent to 65 percent of their unearned premium reserves. Also, as consideration for Continental's assumption of petitioners' liability for unpaid losses, unpaid loss adjustment expenses, and underwriting expenses, petitioners transferred an amount equivalent to the full amount of the reserves for unpaid losses, loss adjustment expenses, and underwriting expenses. As a result of these transactions, petitioners were relieved from liabilities and policy risks for $10,676,071.52 (which was an amount equivalent to 35 percent of the unearned premium reserve) less than they had reserved therefor. Thus a net amount of $10,676,071.52 was released to the free beneficial use of the companies. That this amount represents income is clear from section 832(b)[9] as well as being a long-established principle. See *Union Underwriters of New York, et al., supra; Massachusetts Fire & Marine Insurance Co., supra,* appeal dismissed 42 F. 2d 189 (C.A. 2, 1930); *Central National Fire Insurance Co., supra.* Therefore, unless

---

[8] SEC. 832. INSURANCE COMPANY TAXABLE INCOME.

(a) DEFINITION OF TAXABLE INCOME.—In the case of an insurance company subject to the tax imposed by section 831, the term "taxable income" means the gross income as defined in subsection (b) (1) less the deductions allowed by subsection (c).

(b) DEFINITIONS.—In the case of an insurance company subject to the tax imposed by section 831—

(1) GROSS INCOME.—The term "gross income" means the sum of—

(A) the combined gross amount earned during the taxable year, from investment income and from underwriting income as provided in this subsection, * * *

* * * * * * *

(3) UNDERWRITING INCOME.—The term "underwriting income" means the premiums earned on insurance contracts during the taxable year less losses incurred and expenses incurred.

(4) PREMIUMS EARNED.—The term "premiums earned on insurance contracts during the taxable year" means an amount computed as follows:

(A) From the amount of gross premiums written on insurance contracts during the taxable year, deduct return premiums and premiums paid for reinsurance.

(B) To the result so obtained, add unearned premiums on outstanding business at the end of the preceding taxable year and deduct unearned premiums on outstanding business at the end of the taxable year.

[9] Respondent has computed underwriting income under section 832(b) as follows:

Premiums earned:

| | | | |
|---|---|---|---|
| Gross premiums written during the year | | | 0 |
| Less: | Return premiums | 0 | |
| | Premiums paid for reinsurance | $19, 826, 989. 97 | ($19, 826, 989. 97) |
| Add: | Premiums at Dec. 31, 1964 | | 30, 503, 061. 49 |
| Deduct: | Premiums at Dec. 31, 1965 | | 0 |
| Less: | Losses incurred | 0 | |
| | Expenses incurred | 0 | 0 |
| Underwriting income | | | 10, 676, 071. 52 |

this income is shielded from recognition under the provisions of section 337, as petitioners contend, respondent's determination is correct.

The only dispute over the application of section 337 to the instant case is whether the transaction was a "sale or exchange of property" within the meaning of subsection (a) of that section. We find initially that the income in question did not arise from a "sale or exchange," but rather as a result of the elimination of the requirement of maintaining the reserves, which in turn was caused by the reinsurance of policy risks and assumption of certain liabilities. When Continental Buckeye assumed petitioners' policy obligations, petitioners were no longer required to maintain the reserve for unearned premiums. Since petitioners transferred to Continental Buckeye an amount equivalent to only 65 percent of the unearned premium reserve, $10,676,071.52, or an amount equivalent to 35 percent of the reserve, was thereby released to the free beneficial use of petitioners. In our opinion, this income was realized from a reinsurance transaction rather than from a "sale or exchange" within the meaning of section 337.

Furthermore, petitioners have not met their burden of proving that the income in question arose as a result of the sale or exchange of "property" within the meaning of section 337. Petitioners contend that Continental Buckeye acquired both the expectation of profit from the policies in force and the renewal expirations [10] thereunder when it assumed the policy risks. However, we find that the renewal expirations were acquired as a part of the goodwill transferred pursuant to Article V of the supplemental agreement which provided, in pertinent part, as follows:

The Buckeye Union Group [petitioners] hereby agrees to sell, transfer and assign to The Buckeye Union Insurance Company and The Buckeye Union Insurance Company hereby agrees to purchase the good will of The Buckeye Union Group as hereinafter defined * * *

The good will of The Buckeye Union Group is defined as the business each has developed with general and local agents through operations in the various states. *Good will shall also include all the physical records, books, punch cards, tapes, programs, daily reports, policy registers, contracts of insurance ceded, and all other documents and agreements pertaining to the business reinsured and assumed by The Buckeye Union Insurance Company hereunder.* * * * [Emphasis added.]

---

[10] *V. L. Phillips & Co.* v. *Pennsylvania Threshermen, etc.,* 199 F.2d 244, 246 (C.A. 4, 1952):

" 'Expirations' in the insurance field has a definite and well recognized meaning; it embodies the records of an insurance agency by which the agent has available a copy of the policy issued to the insured or records containing the date of the insurance policy, the name of the insured, the date of its expiration, the amount of insurance, premiums, property covered and terms of insurance. This information enables the agent to contact the insured before the existing contract expires and arms him with the information essential to secure another policy and to present to the insured a solution for his insurance requirements. It has been determined that this information is of vital assistance to the agency in carrying on the insurance business and it has become, in the insurance field, recognized as a valuable asset in the nature of good will."

24

In addition to conceding that the $5,700,000 received as consideration for the goodwill transferred pursuant to Article V of the supplemental agreement represents gain which is entitled to nonrecognition under section 337, respondent contends that petitioners sold all their goodwill under that provision.

On the other hand, petitioners argue that the entire $16,376,071.52 increase in net worth was realized in return for goodwill transferred to Continental Buckeye. We disagree with petitioners because first, there is no evidence that the goodwill of petitioners was worth more than $5,700,000 and second, both parties bargained for and specified in their contract the amount to be paid for goodwill under Article V of the supplemental agreement, and for the reinsurance and assumption of liabilities under Article II of the reinsurance and assumption agreement. In our opinion, the $16,376,071.52 increase in net worth was realized from $5,700,000 received for goodwill, pursuant to Article V of the supplemental agreement, and $10,676,071.52, or 35 percent of the unearned premium reserves retained pursuant to the reinsurance of petitioners' policy risks under Article II of the reinsurance and assumption agreement.

Petitioners' reliance upon *Calley* v. *United States*, 220 F. Supp. 111 (S.D. W.Va. 1963), and Rev. Rul. 65–175, 1965–2 C.B. 41, which held renewal expirations were property in the nature of goodwill, is therefore misplaced because in those instances the subject of the sale was limited to the sale of renewal expirations. Such authorities are of no weight in determining whether petitioners transferred property in return for Continental Buckeye's assumption of their policy risks because, as shown above, the renewal expirations were not transferred as part consideration for the assumption of the policy risks, but were transferred as part of the goodwill for which petitioners received $5,700,000. Since petitioners transferred all their goodwill under Article V of the supplemental agreement, and since petitioners did not transfer any other property from which the $10,676,071.52 gain was realized, it follows that the income of $10,676,071.52 did not arise from the sale or exchange of "property" within the meaning of section 337.

Since we have found no "sale or exchange of property" within the meaning of section 337, the nonrecognition provisions of that section are not applicable to the income of $10,676,071.52. It follows that such amount should have been included in petitioners' taxable income for 1965.

To reflect the conceded adjustments and the conclusions reached herein,

*Decisions will be entered under Rule 50.*