MEDICAL DEFENSE ASSOCIATES, LTD., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Medical Defense Associates, Ltd. v. Commissioner
Docket No. 20379-82.
United States Tax Court
T.C. Memo 1984-459; 1984 Tax Ct. Memo LEXIS 218; 48 T.C.M. (CCH) 968; T.C.M. (RIA) 84459; August 28, 1984. John M. Carnahan III, for the petitioner. Richard A. Witkowski, for the respondent. KORNER
MEMORANDUM OPINION KORNER, Judge: Respondent determined deficiencies of income tax against petitioner for its calendar years 1977 and 1979 in the respective amounts of $21,280 and $20,206. The primary issue presented for our determination is whether petitioner was capable of having taxable income in the years in question. If the answer to this question is no, then a secondary issue arises regarding petitioner's entitlement to an overpayment, based upon a payment of interest with respect to an assessed deficiency for the year 1977. The case was submitted to the Court under the provisions of Rule 122, [1] upon a set of stipulated facts and exhibits. Such stipulated facts, together with facts established by the pleadings and the admissions of the parties in the record herein, form the basis for the Court's findings of fact. *220 Petitioner is a corporation organized and existing under the laws of the State of Missouri, and its principal office at the time of the filing of the petition herein was at Springfield, Missouri. Petitioner's returns for the periods here involved were filed with the Internal Revenue Service Center at Kansas City, Missouri. Petitioner was incorporated and began doing business in the year 1976, and engaged in the business of providing medical malpractice insurance for its members, which included practicing phyisicans, dentists and hospitals licensed to practice in the State of Missouri. Petitioner was formed pursuant to special legislation enacted by the legislature of Missouri in 1975 for the purpose of allowing physicians and hospitals to group together to provide themselves with medical malpractice insurance on the assessment or mutual plan. Chapter 383, sections 383.010 through 383,040, Revised Statutes of Missouri (hereinafter "RSMo"). Under the Missouri statute authorizing the formation of corporations like petitioner, petitioner was required to be formed in accordance with the corporation laws of Missouri relating to insurance companies, section 383.015, RSMo *221 , and the applicable statute further required that "The business of the association shall be conducted so as to preclude any distribution of income, profit or property of the association to the individual members thereof except in payment of claims or indemnities or upon the final dissolution of the association." [Section 383.025, RSMo.] Apparently in consideration of the last requirement, the applicable regulations of the Missouri Department of Insurance, Reg. 190-16.150(1)(A), require that the corporation also be formed in accordance with the nonprofit corporation laws of Missouri, Chapter 355, RSMo, Except where inconsistent with the provisions of the specific act authorizing the formation of petitioner (Chapter 383, RSMo). Such nonprofit laws, section 355.015(3), RSMo, contain requirements concerning distributions to members which are comparable to the quoted provisions of section 383.025, supra.
Neither the applicable Missouri insurance regulations, supra, the charter of petitioner, nor its by-laws, require the establishment of any segregated reserves, except that petitioner's by-laws require that all assessments (i.e. premiums or underwriting *222 income) collected from members be segregated into two separate accounts, depending upon the member's coverage as a physician or as a hospital; that reserves shall be established and maintained for each such class of coverage, based upon claims experience, and shall be maintained at levels so that each fund or account shall be self-sufficient, without requiring contribution from the other. Separate assessments may be made against members of either group, in petitioner's discretion, to cover an insufficiency in the respective funds. For the years in issue, petitioner filed its Federal income tax returns as a mutual insurance company and showed no tax due for either year. In each year, petitioner reported gross income both from investments and from underwriting, but no net mutual insurance company taxable income. Upon audit of petitioner's returns for the years 1977, 1978 and 1979, respondent made adjustments to petitioner's protection against loss account, under section 824, for the year 1978, reducing the amount of loss carryback under section 825 which could be applied against income in the year 1977, and eliminating any loss carryforward into the year 1979. This adjustment *223 produced the determined deficiency for 1977, and this adjustment, together with a further adjustment to the protection against loss account for 1979, produced the determined deficiency for 1979. As stated above herein, the primary issue presented by the parties for decision is whether petitioner has the capacity to realize taxable income. If the answer to this question is negative, then petitioner must prevail; if affirmative, then petitioner concedes that respondent's computations and determination herein are correct in all respects. Petitioner freely concedes that its required organization under state laws relating to nonprofit corporations does not ipso facto make it tax exempt for Federal income tax purposes; that it is not an organization exempt from tax under the provisions of section 501; and that its Federal taxation is governed by the provisions of sections 821-826, relating to certain mutual insurance companies, as determined by respondent. Petitioner nevertheless argues that: (1) Applicable Missouri statutory law requires it "to operate in a manner which precludes the creation of taxable income," in that it is required to organize under the Missouri nonprofit statute, *224 Chapter 355, RSMo, and that both that statute as well as Section 383.025, RSMo, prohibit the payment of income or profits to members, at least until final liquidation. (2) Relying principally on the early cases of Thompson v. White River Burial Association,178 F.2d 954 (8th Cir. 1950) and Early v. Lawyers Title Insurance Corp.,132 F.2d 42 (4th Cir. 1942), petitioner argues that reserves for future losses, either permitted or required under applicable state statutes, should be recognized as deductions for Federal income tax purposes. (3) Petitioner then appears to argue that section 383.025, RSMo, requires the establishment of such a reserve for future losses in the instant case, to which is to be added in each year an amount equal to the total amount of petitioner's net income, apparently both from investment and from underwriting, which amount should be allowed as a deduction for Federal income tax purposes, thus achieving zero taxable income in every year. Respondent's position is that: (1) The state law in question does not restrict the power of petitioner over its gross receipts so as *225 to remove them from the category of gross income; and (2) In any event, the determination of taxable income herein is to be made under Federal, not state law, and that under the controlling provisions of the Internal Revenue Code, sections 821-826, petitioner could and did have taxable income in the years in issue. We agree with respondent. Part II of Subchapter L of the 1954 Code (sections 821 through 826) provides the rules for the taxation of most mutual insurance companies, including this petitioner, and petitioner concedes that this is so. Within the comprehensive scheme provided by these Code sections, there is no provision for a deduction by a taxpayer for any amounts which are added to any reserve accounts, [2] even though such additions may be required by state law. In determining a taxpayer's liability for Federal income tax, Federal law controls. State law may determine the rights to property, and the degree of a taxpayer's ownership of that property, see Poe v. Seaborn,282 U.S. 101 (1930), but Federal law determines how and to whom such rights are to be taxed, Commissioner v. Tower,327 U.S. 280 (1946): Morgan v. Commissioner,309 U.S. 78, 80 (1940); *226 Lucas v. Earl,281 U.S. 111 (1930), and in making the determination of Federal tax liability, state law controls only when it is made applicable by specific act or by necessary implication. Burnet v. Harmel,287 U.S. 103 (1932). In the statutory scheme governing the taxation of mutual insurance companies, is there then any room for the operation of state law? Petitioner urges that there is, in the context of this case, but we disagree. In Thompson v. White River Burial Association,supra, *227 the taxpayer was organized under an Arkansas statute providing for the operation of membership burial societies. The applicable state regulations had provisions similar to the instant case, with three exceptions: (a) There was no specific prohibition against making distributions to members prior to liquidation; (b) Eighty percent of the receipts of taxpayer had to be allocated to a mortuary fund, to be used for no other purpose than to meet claims; and (c) Taxpayer could pay out no more than twenty percent of its gross receipts for expenses, and the types of allowable expenses were specifically enumerated. Respondent determined a deficiency of income tax, inter alia, against taxpayer on the basis that it was not a mutual insurance company and that, conceding that the mortuary fund was excludable from income as being required by state law, taxpayer's taxable income was the excess of twenty percent of its receipts over the expenses permitted to it which were incurred. In affirming the judgment of the District Court for a refund of the taxes so collected, the Court of Appeals held that taxpayer was a mutual insurance company, taxable under the provisions of section *228 207 of the 1939 Code and its predecessors. Since the Government had apparently conceded that taxpayer was not liable for the tax if it was held to be a mutual insurance company, the matter was concluded. In addition, however, and in dictum, the Court went on to say that even if taxpayer were considered to be a nonmutual ordinary insurance company, taxable under the provisions of section 204 of the 1939 Code, and accepting respondent's concession that eighty percent of taxpayer's premium receipts were a reserve required by state law, and therefore deductible as unearnedpremiums, all the remainder of taxpayer's income, derived solely from dues and assessments, to the extent it was in excess of its allowable expenses, was likewise deductible from taxable income as unearned premiums.
This case, heavily relied upon by petitioner, can no longer be considered to have precedential value, at least with respect to years governed by the 1954 Code. In the first place, it is clear that the mere fact that petitioner is a mutual company does not automatically render it nontaxable. Sections 821-826. Secondly, the years before the Court in White River were the years 1934 *229 through 1945. For years prior to 1942, the Internal Revenue Code of 1939, section 207, and its predecessor revenue acts, while taxing underwriting income, provided special deductions to mutual insurance companies of the taxpayer's type, inter alia, for (a) "the net addition required by law to be made within the taxable year to reserve funds * * *" and (b) "the amount of premium deposits retained for the payment of losses, expenses, and reinsurance reserves." Section 207(c)(1)(A) and (c)(3), I.R.C. of 1939. In the Revenue Act of 1942, P.L. 753, section 165(b), 56 Stat. 863, section 207 of the 1939 Code was extensively amended by repealing the above deductions, effective for years 1941, but at the same time eliminating underwriting income from the computation of the taxable income of mutual insurance companies. This arrangement endured into the 1954 Code as sections 821 through 823, and until 1963, when these sections were amended by the 1962 Act, P.L. 87-834, section 8, 76 Stat. 989, so far once again to include underwriting income in the computation of the taxable income of mutual insurance companies, but without granting the former deductions allowed for additions to reserves under *230 pre-1942 law. Thus, as in effect in the years before us, and presently, the 1954 Code taxes statutory underwriting income, sections 821(a), (b), as defined in section 823, with the deductions therein permitted. No provision is made, as was sometimes true under prior law, for additions to underwriting or other reserves, except for the special deduction for additions to the protection against loss account, as provided in section 824 (see footnote 2, supra). We express no opinion as to whether White River was correctly decided under the law as it existed at that time; suffice it to say that it would not be decided the same way today under current law. In Early v. Lawyers Title Insurance Corp.,supra, also relied on by petitioner, for the years 1936 through 1938, taxpayer made additions to a reserve required by state law for title insurance companies, under which a specified amount was required to be added to the reserve in each year to be considered solely as unearned premiums. Affirming a judgment of the District Court that additions to this account were deductible for Federal income tax purposes, the Court of Appeals held that: (1) Such additions *231 were impressed with a trust in favor of policyholders and were not available for the general purposes of the company. As such, they constituted uneared premiums and were not includable in the company's taxable income, under section 204(b) of the Revenue Act of 1936, 49 Stat. 1714. (2) State law determines the degree of ownership which the taxpayer has in property, but Federal law then determines how such rights shall be taxed. In this case, the Court held that state law imposed such restrictions upon the taxpayer's use of the premiums allocated to the reserve account that they could not be considered subject to the free and unfettered control of the taxpayer, so as to constitute taxable income. [3]
It is to be noted that both in White River and Lawyers Title, it was held that the reserves involved were reserves for unearned premiums and, under the facts and *232 the state statutes there involved, were deductible from the respective taxpayers' income. In determining statutory underwriting income for mutual insurance companies, section 823(a)(1)(A) incorporates the provisions of section 832(b). The latter section, while clearly providing an adjustment to gross underwriting income for unearned premiums, section 832(b)(4)(B), does not otherwise define "unearned premiums." Later cases, however, have defined unearned premium reserves as "the amount required by state statute that certain insurance companies hold in reserve representing the prorata portion of each premium in force which is applicable to the unexpired period of the policy term * * *," Buckeye Union Casualty Company v. Commissioner,54 T.C. 13, 20, fn. 5 (1970), affd. 448 F.2d 228 (6th Cir. 1971), with the further requirement that even where a state statute mandates the keeping of an unearned premium reserve, if it cannot be determined whether the reserve funds will ever be released and restored to income, then the additions to the reserve are not deductible for Federal tax purposes. Title and Trust Company of Florida v. Commissioner,58 T.C. 900 (1972); *233 Modern Home Fire & Casualty Insurance Co. v. Commissioner,54 T.C. 839 (1970). Even assuming, without deciding, that in the narrow area of the determination of unearned premiums, there may still be room for the operation of state law, petitioner in the present case clearly cannot qualify. The Missouri statute under which petitioner was organized and upon which it relies here, section 383.025, RSMo, does not require the establishment of any reserve, in any particular amount, or for any period of time. As quoted above herein, all it does is to prohibit petitioner from making any distribution of income, profit or property to its members, except in payment of claims or upon the final liquidation and dissolution of the corporation. Even under Early v. Lawyers Title Insurance Corp.,supra, much relied upon by petitioner, we cannot find that any state mandate reserve for unearned premiums was created here which would be allowable for Federal tax purposes. Petitioner, however, while relying both on White River and Lawyers Title (both of which involved unearned premium reserves), seeks to broaden the holdings of *234 these two cases. Apparently abandoning the idea that it can spell out a deductible unearned premium reserve mandated by state law under the facts of the instant case, petitioner nevertheless urges that these two cases support the broad general proposition that state law can mandate or at least permit the creation of other deductible reserve accounts. Thus, petitioner urges that White River and Lawyers Title "are really judicial recognition of reserve for future losses accounts under another name," and that the broad general requirement of the Missouri statute in this case is sufficient to permit it to reserve, and therefore deduct from income "all income after expenses for future losses." We hold that this position is without merit. We find the Internal Revenue Code provisions which are applicable here to be complete and, with the possible exception of reserves for unearned premiums, to be without any gap which would allow for the free play of state law. Even under the possible exception which we have mentioned, the state statute here falls far short of what is necessary, since it does not mandate the creation of any reserves for unearned premiums or for any other purpose. *235 We accordingly hold that petitioner is capable of realizing taxable income under sections 821 through 826, and respondent's determination is accordingly approved. This holding makes it unnecessary for us to consider the second issue in the case, involving petitioner's payment of interest for the year 1977. Decision will be entered for respondent.
Footnotes
1. Unless otherwise noted, all Rule references refer to the Rules of Practice and Procedure of the Tax Court, and all statutory references are to the Internal Revenue Code of 1954, as in effect in the years in issue.↩
2. One possible exception to the above statement is the deduction provided by sec. 824, which is to be added to a so-called "protection against loss account." Although the Code does not denominate this account as a reserve, it operates in effect like one, with additions to the account being allowed as a deduction, and subtractions from the account being restored to income, under the formula provided by the statute. No issue with regard to the availability of this deduction is present in the instant case, and indeed it is the allowable deductions to and subtractions from this account which form the basis of the controversy herein.↩
3. In Early v. Lawyers Title Insurance Corp.,132 F.2d 42, 45↩ (4th Cir. 1942), the Court said "We agree that a statute of the state could not be given the effect of withdrawing from taxation under the Revenue Act what was in fact an earned premium by the mere device of calling it unearned . . ."